### STATE OF TEXAS V. SHIPPERS COMPRESS AND WAREHOUSE COMPANY.

#### No. 1125. Decided June 19, 1902.

**1.—Trust Law—Constitutionality.**

Conforming the rulings in this State as to the constitutionality of the "trust law" (Houck v. Brewing Association, 88 Texas, 189) to the decisions of the Supreme Court of the United States (Connolly v. Union Sewer Pipe Company, 184 United States, 540) it is held that the "trust law" of 1895 (Revised Statutes, articles 5313-5315), by exempting from its operations agricultural products, etc., in the hands of the producer, violates the fourteenth amendment to the Federal Constitution securing equal protection of the laws, to the extent that it will not support an action by the State to recover a penalty for a violation of the law nor afford a defense to an action on a right originating in its violation; but it is held to be constitutional and valid so far as to authorize the revocation of the license of a foreign corporation or the forfeiture of the charter of a domestic one for violation of its provisions. Waters-Pierce Oil Co. v. State, 177 U. S., 28.   (Pp. 611, 612.)

**2.—Trust Law—Restricting Aids to Commerce.**

The creation of a corporation for the purchase, etc., of cotton compresses, expressing such purposes in the language of the statute authorizing its incorporation (Revised Statutes, article 642, subdivision 28), does not furnish evidence of an intention to violate the trust law in doing the things which the law authorized it to be created for and to do, though such charter contemplates extension of its business over a large part of the State; the right to forfeit its charter depends on the intent with which it was procured, and it is for the State to establish that such intent was the prevention of competition in the aids to commerce, forbidden by the law.   (P. 612.)

**3.—Corporation—Creation for Unlawful Purpose—Evidence.**

The acquisition by the corporation, on the same day, of six compresses in localities distant from each other, might afford evidence that it was the purpose of its promoters, in organizing it, to acquire such properties; but as the act was lawful, it did not in itself afford evidence of an unlawful purpose in creating the corporation.   (Pp. 612, 613.)

**4.—Compressing   Cotton—Preventing   Competition—Regulations   of   Railroad Commission.**

Under the rules adopted by the Railroad Commission regulating the compressing of cotton, competition in the rates of compressing is not probable and barely possible, and an intent to prevent competition by the purchase by one company of several independent compresses, could not be taken as evidence of an intent to suppress such competition.   (P. 613.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

The State procured writ of error from a judgment of the Court of Civil Appeals affirming that of the trial court, which had denied it recovery and from which it had appealed.

*C. K. Bell,* Attorney-General, for plaintiff in error.—Where the incorporators of a corporation obtain a charter for an illegal purpose they thereby perpetrate a fraud upon the State, on account of which the State can, in a proper judicial proceeding, recall or forfeit the charter granted to them. Debenture Co. v. Louisiana, 180 U. S., 330; Distilling Co. v. People of Illinois, 156 Ill., 448; People of Illinois v. Gas Trust Co., 130 Ill., 268; 2 Mora. on Priv. Corp., sec. 769.

Any action by a corporation whereby the directors or shareholders in it are enabled to and do, through the corporation, effect a combination of their capital, skill, and acts for the purpose of preventing competition between aids to commerce constitutes the corporation itself a trust and renders it, alike with those who under its guise accomplish their illegal purposes, guilty of a violation of and subjects it to the penalties prescribed by the law which defines trusts. Rev. Stats., art. 5313; Const. of Texas, art. 1, sec. 26; Railway v. Baptist Church, 108 U. S., 317; People of New York v. Sugar Ref. Co., 2 Law. Rep. Ann., 38; State of Ohio v. Oil Co., 15 Law. Rep. Ann., 158; Ford v. Milk Shippers' Assn., 27 Law. Rep. Ann., 303; People v. Sugar Ref. Co., 9 Law. Rep. Ann., 43; Harding v. Glucose Co., 55 N. E. Rep., 598; Moore v. Bennett, 140 Ill., 80; Salt Co. v. Guthrie, 35 Ohio St., 666; Gibbs v. Smith, 115 Mass., 592; Swan v. Chorpenning, 20 Cal., 182; People v. Gas Trust Co., 130 Ill., 378; People v. Nussbaum, 66 N. Y. Supp., 136; 1 Mora. on Priv. Corp., section 1; Taylor on Corp., sec. 50.

The court erred in rendering a judgment for the defendant and in failing to render a judgment for the State forfeiting the charter of the defendant corporation, because the evidence established the fact, as found by the court, that the defendant had misused and abused its powers in violation of the policy and of the Constitution and laws of the State, and had usurped and exercised powers not conferred upon it, in a manner that produces injury to the public by affecting the welfare of the people, in this: (a) That it acquired and thereby brought under one management and prevented and is preventing competition between existing competing cotton compresses, the same being competing aids to commerce. (b) That it acquired and thereby brought under one ownership and management existing competing cotton compresses, the same being competing aids to commerce, for the purpose of closing them down. (c) That it acquired and thereby brought under one ownership and management existing competing cotton compresses, the same being competing aids to commerce, and thereby created and is now maintaining a monopoly in the business of compressing cotton.

A corporate franchise is granted and held upon condition that it be exercised for the attainment of the objects specified, and when a corporation is guilty of acts contrary to either the statute or common law, the charter of the corporation may be forfeited. Rev. Stats., art. 3528; Insurance Co. v. State, 86 Texas, 274; 1 Eddy on Combinations, 607; Coal Co. v. Coal Co., 68 Pa., 186; 2 Mora. on Priv. Corp., sec. 1024; People of New York v. Sugar Ref. Co., 2 Law. Rep. Ann., 39; People v. Live Stock Exchange Co., 39 Law. Rep. Ann., 377.

A corporation which exceeds its powers in any important particular commits a breach of an implied condition of the contract, and may be properly held subject to the penalty of a forfeiture. Insurance Co. v. State, 86 Texas, 274; Debenture Co. v. Louisiana, 180 U. S., 320; 5 Thomp. on Corp., 609; 2 Cook on Corp., 633; 1 Eddy on Combinations, sec. 607.

At the hearing of this case in the District Court and on its submission in the appellate court it was assumed that the anti-trust statutes of 1889 and 1895 were valid, but the Court of Civil Appeals, following the holding of the Supreme Court of the United States in the case of Connally v. Union Sewer Pipe Company, based their decision, affirming the judgment appealed from, upon the ground that each of these enactments were unconstitutional. It is respectfully submitted that the constitutionality of the statutes referred to is not involved in this case, the sole purpose of which is to forfeit the charter of the defendant corporation.

A charter of a corporation is a contract between the sovereignty which grants it and the incorporators. The State grants a charter subject to any conditions which it may see proper to impose. It could reserve the right to repeal the charter at any time and for any reason, or without reason. 4 Thomp. on Corp., sec. 4512. When the corporators accept the charter they accept it subject to this right, and are estopped from raising the question of the legality of the terms of the contract which they have made. There is no difference in this respect between the charter of a domestic corporation and the permit granted to a foreign corporation authorizing it to transact business within the State.

In the case of the Waters Pierce Oil Company v. State of Texas, 177 United States, 28, in which the constitutionality of the Texas anti-trust statutes of 1889 and 1895 were presented, the Supreme Court of the United States held that it was immaterial whether they were constitutional or not; that although discriminations were imposed by these statutes (discriminations which have since been held by the same court to have rendered the law nugatory), still the corporation acceded to the conditions (however reasonable or unreasonable, discriminatory or otherwise they may have been) upon which the State was willing to and did grant it the desired permit, and that for the violation of these conditions the permit could be canceled. If the Waters Pierce Oil Company had been a domestic corporation its charter could have been canceled as

its permit was, and this entirely regardless of the question as to whether or not the statutes of 1889 and 1895 were constitutional.

In the case of Connally v. Union Sewer Pipe Company, 184 United States, 540, it is expressly stated by the justice who rendered the opinion of that court, that if the defendant in that case had been a domestic corporation its charter could have been forfeited. This is entirely in accord with the decision in the case of the Waters Pierce Oil Company v. State, and is in line with the holding of the courts, including the Supreme Court of the United States. Doyle v. Insurance Co., 94 U. S., 535; People v. Fire Assn., 92 N. Y., 311; Vose v. Cockroft, 44 N. Y., 415; Phyfe v. Eimer, 45 N. Y., 103.

*A. M. Carter* and *Crane, Greer & Wharton* [from brief in appellate court], for defendant in error.—There is no evidence that the incorporators or promoters of the defendant company had any illegal purpose in procuring the charter of defendant company, which the Attorney-General, in his brief, admits to be valid on its face. Hooper v. Gates, 39 S. W. Rep., 1079; Tobler v. Austin, 53 S. W. Rep., 706; Wolff v. Hirschfield, 57 S. W. Rep., 572; McClurg's Appeal, 58 Pa. St., 51; Kelsy v. Pf. C. Co., 19 Abb. M. C., 434; 45 Hun, 15; People v. Nussbaum, 66 N. Y. Supp., 134; Morse v. Mason, 103 Mass:, 560; Match Co. v. Roeber, 106 N. Y., 483; 1 Eddy on Com., sec. 620; Craft v. McConoughy, 22 Am. Rep., 171.

The Legislature did not intend by the acts of 1889 and 1895, or either of them, to prohibit the organization of corporations for the purpose of purchasing competing properties. That end was sought to be attained only by the Act of 1899, which does not include compress companies within its aims. Anti-Trust Acts 1889; Anti-Trust Act 1895; Anti-Trust Act 1899; Insurance Co. v. State, 86 Texas, 250.

It is not unlawful for an individual or a corporation to merely acquire competing properties. 1 Eddy on Com., sec. 620; Match Co. v. Roeber, 106 N. Y., 483; Craft v. McConoughy, 22 Am. Rep., 171.

It was not unlawful for the promoters of the defendant corporation to procure the charter in question, it being authorized by statutes of the State. Rev. Stats., art. 642, subdiv. 28.

Two lawful acts committed in a lawful way, namely, the procuring of a charter in a manner authorized by law and the acquisition of property thereunder, do not prove a criminal conspiracy, but the intention to defraud or to restrain trade, if it existed, must be proven by evidence aliunde. 6 Am. and Eng. Enc. of Law, 2 ed., 840 and note thereto, 864 and note thereto; Blain v. State, 33 Texas Cr. App., 236; Atkinson v. State, 34 Texas Cr. App., 424; Menges v. State, 25 Texas Cr. App., 710; 2 Bish. New Crim. Proc., 237-247.

*Crane, Greer & Wharton* [on writ of error], for defendant in error.— If the anti-trust statute of 1895 is void because in conflict with the Constitution of the United States, it is a nullity, and is not binding on any

person, natural or artificial, or on any corporation, domestic or foreign, and can not impose any duty or inflict any penalty on any corporation. Coal Co. v. Barton, Sup. Court Rep., Dec. 5, 1901, p. 5; Insurance Co. v. Morse, 20 Wall., 445-459; Southern Pacific Co. v. Denton, 146 U. S., 207; Commonwealth v. Coal Co., 97 Ky., 243; Bigelow v. Nickerson, 30 Law. Rep. Ann., 340; Rece v. Newport News, 32 W. Va., 170-173.

The charter of the defendant company is a contract between it and the State, which can not be forfeited except for violation of the contract itself, or for the violation of a valid law of the State. Dartmouth College v. Woodward, 4 Wheat., 518, 519; Rev. Stats., arts, 2901, 4343; State v. Railway, 24 Texas, 80; People v. Manhattan, 9 Wend., 357; State v. Turnpike Co., 2 Sneed (Tenn.), 254.

The Court of Civil Appeals having decided that there was no evidence of any combination, or any agreement in violation of the statute, this court is without jurisdiction to revise its ruling and to determine to the contrary, and to substitute its decision on a question of fact for the decision of the Court of Civil Appeals. Const., art. 5, sec. 6; Rev. Stats., art. 940; Warren v. City of Denison, 89 Texas, 557; Agency Co. Case, 86 Texas, 179; Dillingham v. Richards, 87 Texas, 247; Railway v. Levine, 87 Texas, 440; Schley v. Blum, 22 S. W. Rep., 667.

*Baker, Botts, Baker & Lovett,* also for defendant in error.—The anti-trust statutes of this State are in contravention of section 1, article 14, of the amendments of the Constitution of the United States, providing that no State shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws, and are therefore void.

Since the statutes are in contravention of the Federal Constitution, they are absolutely void, and can not authorize the forfeiture of defendant's charter, or be given any effect whatever as laws.

The transactions in question are not illegal under the common law, and if they were, the penalty of forfeiture could not be inflicted.

Even if the anti-trust statutes are entitled to any effect whatever in this case, they are not applicable to the occupation or service of compressing cotton, for there being no element of barter or sale involved, combinations affecting that business are not prohibited by such statutes.

The anti-trust statutes of this State were not intended to prohibit the purchase and sale of property where the restriction of competition is merely an incident but not the controlling object and purpose. An intent to suppress or restrict competition is the gist of the offenses denounced by the statute; and no such intent appears in this case.

Rates for the compression of cotton are subject to regulation by the Railroad Commission, and are therefore not within the operation of the anti-trust statutes in any event.

BROWN, ASSOCIATE JUSTICE.—The Attorney-General instituted this suit in the District Court of Travis County, Fifty-third District, against

the defendant in error, a corporation chartered under the general law of the State of Texas, on the 10th day of June, 1901, by a charter which authorized it "to construct or purchase and maintain mills, gins, cotton compresses, grain elevators, wharves, and public warehouses for the storage of products and commodities, and the purchase, sale, and storage of products and commodities by grain elevator and public warehouse companies, and the loan of money by such elevator and public warehouse companies." The place of business of said corporation being designated as "in the counties of Dallas, Ellis, Navarro, Henderson, Smith, Kaufmann, Van Zandt, Wood, Raines, Rockwall, Hunt, Hopkins, Delta, Fannin, Collin, Grayson, Cook, Montague, Clay, Jack, Wise, Denton, Tarrant, Parker, Eastland, Jones, Taylor, Wichita, Johnson, Hood, Erath and Hill."

It is charged that the incorporators, "Neil P. Anderson, B. L. Anderson, C. J. Sorrells, P. R. Freeman, Richard Clark, W. E. Campbell, and F. J. Phillips each made and entered into a combination of their capital, skill, and acts, and an agreement, confederation, and understanding with each of the others, and all together, for the purpose of creating and carrying on restrictions in trade and commerce and preventing competition in the aids of commerce."

It is alleged that said parties agreed to buy and acquire certain properties situated in the northern part of the State of Texas, and thereby prevent competition between the said cotton compresses, and, in pursuance of said agreement, the said parties executed and filed a charter in the form required by law; that in pursuance of the said agreement and by virtue of the authority conferred by the charter, the corporation, on the 11th day of September, 1901, purchased three compresses in the city of Dallas,—being the only compresses in that city; a compress at Terrell; one at Gainesville, and one at Cisco,—all of said compresses being competing aids to commerce, were bought and acquired for the purpose of, and did in fact, create and carry out restrictions in trade and commerce, and are preventing competition between aids to commerce. The petition declares that these acts were in violation of the anti-trust law of Texas and worked a forfeiture of the charter of the said corporation, and the court is asked, upon a hearing, to declare the said charter to be forfeited.

The case was tried before the Hon. F. G. Morris, judge of the Fifty-third District, Travis County, who rendered judgment against the State of Texas, from which judgment appeal was taken to the Court of Civil Appeals of the Third Supreme Judicial District, which court affirmed the judgment of the trial court.

We make the following condensed statement of the facts agreed upon by the parties:

The corporation was regularly chartered on the 10th day of June, 1901, by filing with the Secretary of State a written charter containing all of the essentials prescribed by the statute. The purposes declared in the charter are those alleged in the State's petition hereinabove copied,

and the places designated in the charter are the same alleged in the said petition.

The City of Dallas is situated about the center of the north half of the State of Texas, 76 miles south of Red River. The town of Terrell is on the Texas & Pacific and Midland Railroads, about 30 miles east of the city of Dallas. The town of Gainesville is situated on the Missouri, Kansas & Texas and Gulf, Colorado & Santa Fe railroads, about 88 miles northwest of the city of Dallas; and the town of Cisco is situated on the Texas & Pacific and Texas Central railroads, 146 miles west of the city of Dallas.

That in the year 1901 there were raised in the counties in which the corporation was authorized to do business 1,431,000 bales of cotton.

There are about seventy compresses in the State of Texas, the location of each of which is not necessary to be stated here, but was agreed upon by the parties. The Clarksville Compress Company, a Texas corporation, owned a compress in Dallas, which was operated until about the 10th day of March, 1901; the defendant purchased the properties of the said compress company on the 11th day of September, 1901. The Dallas New Cotton Compress Company, organized under the laws of Texas, owned a compress in the city of Dallas, which the defendant purchased and acquired on the 11th day of September, 1901. The Texas Compress Company, a Texas corporation, owned a compress in the city of Dallas, which the defendant in error acquired on the 11th day of September, 1901. The Texas Compress Company, likewise a Texas corporation, owned a compress in the city of Terrell, which the defendant purchased on the 11th day of September, 1901. The Gainesville Compress and Warehouse Company, a Texas corporation, owned a compress in the city of Gainesville, which the defendant purchased on the 11th day of September, 1901. The Cisco Compress Company, a Texas corporation, owned a compress in the town of Cisco, which the defendant purchased on the 11th day of September, 1901.

We make a condensed statement of the rules and regulations of the Railroad Commission of Texas concerning the compression of cotton, presenting those provisions which bear upon the question before the court:

(1) The railroad companies are required to pay the cost of compressing cotton, which can not exceed 10 cents per hundred pounds.

(2) All cotton must be compressed at the shipping point if there be an accessible compress at that place.

(3) If there be no compress at the point of shipment, then the cotton must be compressed at the press nearest to the point of shipment and in the line of transportation towards the final destination of the cotton, being seventy miles from the point of destination.

(4) At the request of the shipper, the railroad company may carry the cotton to a place for compression not in the line of shipment, if it be the nearest compress to the place from which the shipment is made.

· (5) If the point at which the shipment originates be a junction between two or more railroads, at which there is no compress, and the shipper shall direct the cotton to be compressed at another junction of the same railroads, if either railroad can, in accordance with the rules of the commission, carry the cotton to the junction for compression, then either of the other roads may carry it to the same place, although in doing so the cotton would be carried by other compresses on the line of the carrying road.

· (6) The concentration of cotton shall be made at a point in the direction of the destination of the shipment, except that in case the shipper shall request the railroad company to carry the cotton for concentration to a point not in the direction of the shipment, but on its own line of road, if such point be nearer to the origin of the shipment.

. (7) If it be desired to concentrate cotton at a point which is the junction of two or more railroads and the cotton to be concentrated is offered for shipment at another point or junction of the same railroads, if either railroad company can, in accordance with the rules, carry the cotton to the desired point for concentration, then either of the other railroads may carry it over their own line to the same point of junction, although in doing so it would be carried by other compresses.

· The defendant in error has operated all of the compresses bought by it in compliance with the rules of the Railroad Commission, except that the compress purchased of the Clarksville Compress Company was dismantled for removal before it was purchased, and has not been operated; and the Texas compress at Dallas was out of repair, and the cotton crop so light that the other compress could do all the work that was required; hence the Texas compress has not been operated during the last year.

· The capacity and average annual business of each compress purchased by the defendant is as follows: Clarksville compress, capacity 60,000 bales, average number of bales compressed annually 12,500; the Texas compress, capacity 60,000, average number of bales compressed annually 30,000; the Dallas new compress, capacity 100,000 bales, average number compressed annually 50,000; the Terrell compress, capacity 60,000 bales, average number compressed annually 40,000; the Gainesville compress, capacity 75,000 bales, average number of bales compressed annually 65,000; the Cisco compress, capacity 60,000 bales, average number of bales compressed annually 40,000.

To be profitable, a compress must turn out 25,000 bales annually. If run to their full capacity, the above named compresses would yield a net profit of 20 cents per bale. All compresses in the State of Texas charge the rate fixed by the commission,—10 cents per hundred pounds.

· Before the incorporators filed the charter they consulted competent counsel, who advised that the transaction would not violate the antitrust law.

· The Act of 1895, under which this action was brought, contains the following provisions:

"Art. 5313. A trust is a combination of capital, skill, or acts by two

or more persons, firms, corporations, or associations of persons, or either two or more of them, for either, any or all of the following purposes:

"1. To create or carry out restrictions in  *  *  *  aids to commerce  *  *  *.

"Art. 5314. Any corporation holding a charter under the laws of the State of Texas which shall violate any of the provisions of this chapter shall thereby forfeit its charter and franchise, and its corporate existence shall cease and determine.

"Art. 5315. For a violation of any of the provisions of this chapter by any corporation mentioned herein, it shall be the duty of the Attorney-General or district or county attorney, or either of them, upon his own motion, and without leave or order of any court or judge, to institute suit or quo warranto proceedings in Travis County, at Austin, or at the county seat of any county in the State where such corporation exists, does business, or may have a domicile, for the forfeiture of its charter rights and franchise, and the dissolution of its corporate existence."

The State seeks to forfeit the charter of the defendant corporation because the incorporators combined "to restrict aids to commerce," and procured the charter with intent to carry out that purpose. The defendant insists that the law is unconstitutional, therefore void in whole, and will not support the action to forfeit the charter. Upon the same objection we held the anti-trust law of 1889 to be constitutional, and there is no such difference between the two laws as would affect the decision of this question. We believe that our decision is correct; that the law is not in contravention of the Constitution of the State nor of the United States. Houck v. Brewing Assn., 88 Texas, 189. In the case of Connolly v. The Union S. and P. Co., 22 Supreme Court Reporter, 431, the Supreme Court of the United States held that a statute of the State of Illinois, in all essential particulars the same as the act of 1895, was in conflict with the fourteenth amendment to the Constitution of the United States because it excepted "agricultural products and live stock while in the hands of the producer or raiser." We recognize the superior authority of the Supreme Court of the United States upon this question, and in obedience to its decision we shall hold that in so far as the law of 1895 comes within the terms of the Connolly case, it is invalid; it will not support an action by the State to recover a penalty for a violation of the law, nor will it, in suits between corporations or individuals, support a defense based upon the fact that the right of action originated in a violation of the anti-trust law. But to the extent that the statute of this State is not embraced in the decision of the Supreme Court of the United States, we shall adhere to our former decision that it is constitutional and valid, and therefore enforcible by the State.

In the case of Waters Pierce Oil Company v. The State of Texas, 177 United States, 28, the very question that is now before this court was decided by the Supreme Court of the United States. In that case the State sued to revoke the license of the Waters Pierce Oil Company to do business in Texas, alleging as a reason therefor that it violated the anti-trust

law of 1889. The judgment of the State court forfeited and revoked the license of the corporation to do business in Texas, and the case was taken to the Supreme Court of the United States upon a writ of error. The question was sharply presented upon the specific objection that the statute was void because of the very reasons upon which the court held the Illinois statute void in the Connolly case; but the Supreme Court of the United States held that under the law of 1889 the license to do business in Texas might be revoked, although the statute should be held void upon the grounds claimed by the corporation, which was conceded in the Connolly case. The judgment of the State court in the former case could not have been affirmed except by holding the statute to be constitutional, or if void as to the enforcement of the penalty, it was valid in so far as it reserved the right to the State to revoke the license because of the violation of the anti-trust law. There is no difference between that case and the present; we therefore hold that the law of 1895, tested by the decision of the Supreme Court of the United States, is valid to the extent that it authorizes the State to revoke the license of a foreign corporation, or to forfeit the charter of a domestic corporation, for acts done which are forbidden by the anti-trust law.

The defendant in error claims that there is no evidence tending to prove that the incorporators secured the charter and organized this corporation "to create and carry out restrictions in aids to commerce," and that the judgment should be affirmed, notwithstanding the State might have the right to forfeit the charter if the proof established a violation of the anti-trust law. We are of opinion that this contention is sound, and that there is no evidence which tends to support the charge upon which the forfeiture of the defendant's charter is sought.

Article 642, Revised Statutes, subdivision 28, expresses a purpose for which a corporation may be formed in the following terms:

"The construction or purchase and maintenance of mills, gins, cotton compresses, grain elevators, wharves, and public warehouses for the storage of products and commodities, and the purchase, sale, and storage of products and commodities by grain elevators and public warehouse companies, and the loan of money by such elevator or public warehouse companies."

The charter expresses the purpose of the corporation in the very language of the statute; therefore it can not be said that the purposes for which it was organized, as expressed in the charter, furnish any evidence of an intention to violate the law. The corporation could lawfully do everything expressed in the charter, and might lawfully buy all of the compresses that it purchased. The right to forfeit the charter depends upon the intent with which it was procured, and it devolved upon the State to establish an unlawful intent to justify the forfeiture claimed.

In determining the question of intention, we must consider as true every fact which can be fairly inferred from the evidence, and we are of opinion that the acquisition, on the same day, of six compresses situated in localities distant from each other, will support the inference that the

purpose of the promoters in organizing the corporation was to acquire those properties, and if the facts show that in doing so they have violated the law, then we are of opinion the evidence would justify the conclusion that their intention in forming the corporation was to accomplish the unlawful purpose. It is not unlawful for the corporation to buy all of the properties that it acquired, nor was it unlawful for it to acquire them all at the same time, and we see nothing in that fact which tends to show that the object, at the time of organizing the corporation, was to do a lawful act to effect an unlawful purpose.

It is contended on behalf of the State that the effect of this purchase was to restrict aids to commerce and to destroy competition between the purchased compresses. We must bear in mind that we are searching for the intention of the parties in filing the charter, and to arrive at that must look at the facts from their standpoint. The evidence shows that seventy compresses existed in the State of Texas, located in various parts of the State, which at the time, and since, charged 10 cents per hundred pounds for compressing cotton; hence there was at that time no competition as to charges between any compresses in the State. It is true the Railroad Commission had no direct control over the rates to be charged for compressing cotton; but by fixing the amount to be paid by the railroad companies, the commission indirectly but effectually fixed the sum to be received by compresses, and by regulating the delivery of cotton, by the railroads, for compression, the compress at each point was protected in its legitimate business and confined to its own territory. Competition between compresses is not probable and barely possible under those rules. There being no competition between any of the compresses purchased by the defendant corporation, competition was not destroyed or restricted,—it did not exist. Taking the rules of the Railroad Commission into account, we can not understand how the corporation expected to restrict competition between those properties, for under those rules it was impossible for the compress at Gainesville to compete with the compress at Terrell, at Dallas, or at Cisco, because if cotton should be started south at any point south of Gainesville, the rules required it to be compressed at the next press on its line of shipment in the direction of its final destination, by any route it would pass intermediate compresses, and could not reach Dallas for compression; this is true also of Cisco; neither could cotton be carried for compression from or through Terrell to Dallas, and all cotton shipped from intermediate points must be carried to the nearest compress in the direction of its destination. No competition could exist between compresses at Dallas and Terrell. But it is claimed that competition was destroyed between the three compresses in Dallas. The evidence shows that rates were never changed, and fully and fairly explains why the two compresses were not operated in Dallas last season. It is asserted that if the three compresses had remained separate at Dallas, one or more of them might have reduced the price of compressing cotton. This is so remote a probability that, under existing conditions, it can not have weight in determining the question of

intent. We are of the opinion that there was no evidence upon which the court could have entered a judgment forfeiting the charter of the defend-ant corporation; we therefore affirm the judgments of the Court of Civil Appeals and of the District Court.

*Affirmed.*