## MARATHON OIL CO. v. HADLEY et al.

### No. 13053.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 18, 1935.

Rehearing Denied March 29, 1935.

Further Rehearing Denied July 2, 1937.

R. C. Gwilliam, of Tulsa, Okl., and Hiner & Pannill, of Fort Worth, for appellant.

McLean, Scott & Sayers and Jack S. Binion, all of Fort Worth, for appellees.

DUNKLIN, Chief Justice.

The Marathon Oil Company has appealed from a judgment denying it a recovery against defendants J. Hall Hadley and his mother, Mrs. L. M. Hadley, for the purchase price of gasoline, lubricating oil, and other materials used in the operation of automotive machines which was sold by the Transcontinental Oil Company to the defendant J. Hall Hadley and the account transferred and assigned by that company to the Marathon Oil Company. The petition was based upon an account of such sales, which was duly verified, and upon a contract in writing. signed by the defendant Mrs. L. M. Hadley, guaranteeing payment of the articles so purchased.

Following are special issues submitted to the jury with their findings thereon:

"1. Do you find from a preponderance of the evidence that on or about April 1, 1930, the defendant, J. Hall Hadley, entered into a verbal contract with the Transcontinental Oil Company, through its agent Bruce Whitson, whereby the said J. Hall Hadley agreed that he would not sell, nor offer for sale at his filling station at 3923 Camp Bowie Boulevard any gasoline and oil other than the gasoline and oil of said Transcontinental Oil Company, other than such gasoline or oil as said Hadley had on hand at said station at the time said verbal contract was entered into, if you have found that such verbal agreement was entered into between them?

"Answer: Yes.

"2. Do you find from a preponderance of the evidence that on or about April 1, 1930, the defendant J. Hall Hadley verbally agreed with the Transcontinental Oil Company through its agent Bruce Whitson that he would sell whatever gasoline and oil he obtained from the Transcontinental Oil Company at his filling station at 3923 Camp Bowie Boulevard, at a price to be regulated and fixed by said Transcontinental Oil Company?

"Answer: Yes.

"3. Do you find from a preponderance of the evidence that all of the items set out in the plaintiff's verified account introduced in evidence before you were purchased by said defendant, J. Hall Hadley, under a verbal agreement between said Hadley and the Transcontinental Oil Company, through its agent Bruce Whitson, the terms of which were that the price at which the gasoline and oil sold by said Hadley at his filling station at 3923 Camp Bowie Boulevard was to be regulated and fixed by the Transcontinental Oil Company, and that said defendant, J. Hall Hadley would sell, or offer for sale at said station only the gasoline and oil of the Transcontinental Oil Company?

"Answer: Yes.

"4. In the event you have answered questions One and Two or either of them in the affirmative, and in that event only, then answer: Do you find from a preponderance of the evidence that Bruce Whitson had authority from the Transcontinental Oil Company to make the verbal agreements inquired about in Questions One and Two, or in either of said questions?

"Answer: Yes."

The facts so found by the jury were alleged in defendants' answer in connection with the further allegation, which was sustained by evidence introduced, that the merchandise shown in the verified account was sold after that contract was entered into and pursuant thereto. Defendants further alleged that by reason of those facts plaintiff's contract for the sales, evidenced by the verified account sued on, was in violation of the anti-trust statutes of the state and therefore unenforceable. And upon the trial in the court below defendants admitted that the debt sued for by plaintiff was just and due unless defeated by the defense of illegality just mentioned.

We believe the contract comes well within the prohibitive provisions of chapter 1, title 126, beginning with article 7426, Rev.Civ.Statutes, commonly designated as the anti-trust statutes. And by article 7437 in the same chapter, it is provided that any contract or agreement in violation of the provisions of any articles in that chapter "shall be absolutely void and not enforcible either in law or equity." See 10 Tex.Jur. §§ 135 and 136, pages 232 and 233. And in section 142, page 248, same volume, the following is said:

"Where the original contract is illegal, any subsequent contract which carries it into effect is also illegal. A mere change in the security or in the form or evidence of a demand will not remove the taint. If the subject matter of the contract can be traced back between privies to an original illegal contract, the substituted security is void; and this is true even though the parties liable on the last security were not privy to the illegal bargain.

"A contract guaranteeing performance of an illegal contract, or a lien securing its performance, is also invalid, and notes or checks given pursuant to such a contract, or a note given in renewal of, or in substitution for, a previous note which was founded on an illegal consideration, or a subsequent promise to pay the debt evidenced by such a note, cannot be enforced."

Section 144, page 251, announces that a promise which is entirely disconnected with an illegal act and founded on a new or different consideration is not tainted by the illegal act. In section 145, page 254, this is said:

"The test for determining whether a demand connected with an illegal act can be enforced is whether the person seeking to enforce it requires any aid from the illegal transaction to establish his case. No recovery can be had if it is necessary for the plaintiff to prove, as part of his cause of action, his own illegal contract or other illegal transaction. But the plaintiff may recover if he can show a complete cause of action without being obliged to prove his own illegal act, although such act may incidentally appear, and may be explanatory even of other facts in the case, it being sufficient if his cause of action is not essentially founded upon something which is illegal."

Many decisions are cited to support the foregoing announcements. Appellant insists that a prima facie showing for recovery was made out by the introduction of the verified account sued on

without the aid of the preliminary oral contract found by the jury and pursuant to which the merchandise was sold, and therefore the sales made were not tainted with the illegality of the preliminary agreement. That position is untenable since the preliminary contract necessarily entered into and became a part of the sales contract and constituted a part of the consideration therefor. See Edwards County v. Jennings, 89 Tex. 618, 35 S.W. 1053; Rawleigh Co. v. Gober (Tex.Civ.App.) 3 S.W.(2d) 845; Rawleigh Co. v. Land, 115 Tex. 319, 279 S.W. 810; Scoggins v. Furst & Thomas (Tex.Civ. App.) 9 S.W.(2d) 405. In McMullen v. Hoffman, 174 U.S. 639, 19 S.Ct. 839, 845, 43 L.Ed. 1117, this is said:

"Upon the point as to the ability of the plaintiff to make out his cause of action without referring to the illegal contract, it may be stated that the plaintiff, for such purpose, cannot refer to one portion only of the contract upon which he proposes to found his right of action, but that the whole of the contract must come in, although the portion upon which he founds his cause of action may be legal."

One of the decisions cited in that case was Embrey v. Jemison, 131 U.S. 336, 9 S.Ct. 776, 779, 33 L.Ed. 172, in which Justice Harlan said:

"Assuming the averments of the plea of wager to be true, it is clear that the plaintiff could not recover upon the original agreement without disclosing the fact that it was one that could not be enforced or made the basis of a judgment. He cannot be permitted to withdraw attention from this feature of the transaction by the device of obtaining notes for the amount claimed under that illegal agreement; for they are not founded on any new or independent consideration, but are only written promises to pay that which the obligor had verbally agreed to pay. They do not, in any just sense, constitute a distinct or collateral contract based upon a valid consideration."

See, also, McManus v. Fulton, 85 Mont. 170, 278 P. 126, 67 A.L.R. 690.

■ Since plaintiff's suit was for merchandise alleged to have been sold to J. Hall Hadley, it is in no position to say that the preliminary contract with J. Hall Hadley was with him as an agent only. The testimony showed that the preliminary contract referred to above and found by the jury was made with Bruce Whitson for and in behalf of the Transcontinental Oil Company.

Defendants introduced evidence sufficient, prima facie, to show that at the time the preliminary oral agreement, found by the jury, was made with Bruce Whitson, J. C. McCoy was the Texas sales manager of the Transcontinental Oil Company, and Bruce Whitson was assistant Texas sales manager, whose duties included the making of contracts with purchasers, which contracts were then passed upon by J. C. McCoy and also by H. C. Scott, the company's representative at Tulsa, Okl. J. C. McCoy testified that contracts made for the company by local representatives had to be submitted for approval to him or his assistant. Defendant J. Hall Hadley testified that he was not told and did not know that the contract made with him by Whitson had to be submitted to the Tulsa office for approval; and, according to his further testimony, prices realized by him for gasoline were fixed by McCoy and in some instances expressly authorized from the company's Tulsa office. That testimony, and other facts in evidence, was sufficient, prima facie, to show that the act of Whitson in making the preliminary agreement for sale with J. Hall Hadley was within the apparent scope of his authority as assistant sales manager of the company and therefore binding upon the company. 2 Tex.Jur. § 39, p. 425; § 40, p. 427; § 43, p. 431.

■ The contract of Mrs. L. M. Hadley to guarantee the payment for purchases thereafter to be made by J. Hall Hadley was tainted with the same vice of illegality as that inuring in the original contract with J. Hall Hadley. 10 Tex.Jur. § 142, p. 248, and decisions there cited, such as Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S.W. 29, 750, 35 L.R.A. 241; W. T. Rawleigh Co. v. Land, 115 Tex. 319, 279 S.W. 810.

■ Appellant cites title 93, chapter 8, arts. 5737–5764, Rev.Civ.Statutes, authorizing the formation of "marketing associations," and providing that the association and its members may execute marketing contracts requiring members to sell for a period of time not over ten years, all or any specified part of their agricultural products exclusively to or through the association or any facilities created by it; and article 5762 provides that no such an association nor any such contract with its members shall be deemed illegal or in restraint of trade. It is then insisted that the discrimination there made in favor of such associations and contracts now renders the enforcement of our Anti-Trust Statutes vio-

lative of section 1, article 14, of amendments to the Federal Constitution. We are referred to extensive briefs on this question, filed in the case of State of Texas v. Standard Oil Company et al., 82 S.W.(2d) 402, now pending in the Court of Civil Appeals of the Third Supreme Judicial District of Texas, discussing the same question. Our anti-trust statutes have often been sustained as constitutional when attacked on grounds other than the one now presented; and since it is not clear that this attack is meritorious, we shall overrule it without attempting a review of the voluminous arguments and authorities to be found in the briefs filed in the other case. State v. Shippers' Compress & Warehouse Co., 95 Tex. 603, 69 S.W. 58, 10 Tex.Jur. § 131, p. 222. Courts will resolve every reasonable doubt in favor of the validity of a statute, and every reasonable intendment will be indulged in favor of its validity unless its repugnancy to the Constitution clearly appears. 6 R.C.L. § 98, p. 97; § 100, p. 101. It does not clearly appear to us that this classification in favor of farmers and farm products is arbitrary and not based on reasonable and justifiable distinctions; nor that the marketing associations act is in pari materia with the anti-trust civil statutes and the penal statutes enacted to insure their observance and therefore to be read as exemptions from their operation. 6 R.C.L. § 369, p. 373 et seq.

Appellant cites such cases as State v. Gulf Refining Co. (Tex.Civ.App.) 279 S.W. 526; Cox, Inc. v. Humble Oil & Refining Co. (Tex.Com.App.) 16 S.W.(2d) 285; Jones Inv. Co. v. Great A. & P. Tea Co. (Tex.Com.App.) 65 S.W.(2d) 495, in which it was held that contracts there involved were not violative of the anti-trust statutes. We believe it sufficient to say that those cases are distinguishable from the case at bar in that the restraint against freedom of trade with other parties were not as far reaching as the preliminary oral agreement found by the jury in this case, and on which the defense was predicated.

Defendant's place of business was changed from No. 3923 Camp Bowie boulevard to another location in the same city with the knowledge and without objection of the Transcontinental Oil Company; and thereafter Hadley continued business with the company under the original contract the same as before. Under such circumstances, the mere change in business location did not of itself render ineffective the preliminary parol contract found by the jury.

All assignments of error are overruled and the judgment of the trial court is affirmed.

## On Motion for Rehearing.

Appellant presents an extended argument with citation of many authorities to show that in the absence of a plea of estoppel plaintiffs were in no position to rely on the apparent scope of authority in Bruce Whitson to bind appellant by the contract made by it with J. Hall Hadley, as found by the jury. The argument is directed chiefly to the language "apparent scope of authority" used in our original opinion. Many of the authorities cited do hold that a plea of estoppel is necessary as a basis for reliance upon apparent scope of authority of an agent when the agent is without authority in fact to bind his principal in certain transactions. But we believe those authorities are distinguishable from the present suit on the facts. We believe they are applicable only when the agent is acting beyond the apparent scope of his authority, and that they were not intended to contravene the rule announced in 2 Tex.Jur. § 39, p. 425, as follows:

"The doctrine of apparent authority embodies a principle of the common law which has been called 'the foundation of the law of agency.' This doctrine may be stated as follows: When a principal has placed an agent in such situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is led to believe that the agent has authority to perform acts usually done in a business of that kind, one dealing with the agent is justified in presuming such authority to have been given. Having by creation of the agency bestowed upon his representative a certain character, the principal will not be heard to assert, as against third persons dealing upon the faith of that character, that he did not intend to confer so much authority. Such persons have the right to conclude that the principal intended that the agent should have and exercise those powers which properly and legitimately belong to the character in which he holds him out. As the rule has been tersely put: 'A principal is equally bound by the authority which he actually gives, and by that which by his own act he appears to give', and an act of the agent within the scope of his apparent authority 'is as binding on the principal as if the agent was actually possessed of the authority.'

"The question in all cases of apparent authority is, not what was the authority actually given? but, what would a third person dealing with the agent as such be justified in believing his authority to be?"

The expression "apparent authority" is often used as synonymous with "implied authority," and such was the meaning intended in our original opinion.

We quote the following from 21 R.C.L. § 34, pp. 855 and 856:

"The liability of the principal is not limited to such acts of the agent as are expressly authorized or necessarily implied from express authority. All such acts of the agent as are within the apparent scope of the authority conferred on him are also binding upon the principal, apparent authority being that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing. By implication the authority of the agent is enlarged when the principal permits him to do acts not expressly authorized, or which are recognized as valid after they have been done. And the actual instructions from principal to agent do not govern the case, unless the person dealing with him had notice or was put upon inquiry as to his real authority. Apparent authority may be and often is derived from a course of dealing, or from a number of acts assented to or not disavowed. * * * The apparent authority of an agent to act as the representative of his principal is to be gathered from all the facts and circumstances in evidence, and ordinarily this is a question of fact for the jury's determination."

And the following from 1 Mecham on Agency (2d Ed.) § 720, p. 509:

"It is also frequently said that the principal will be bound to third persons by acts within the 'apparent authority' of the agent, even though they would not be within his real authority. The expression 'apparent authority', however, though one of constant use in this connection, seems unfortunately to have no fixed meaning. It seems naturally to suggest a distinction between what is real and what is only apparent; though such a distinction is not essential, since what is apparent may be real and what is real may be apparent."

And again on page 722, § 510:

"So far as powers depend upon what is usual or necessary in special cases, and so far as they are regarded as incidental to the main authority conferred because that is the regular and ordinary way of doing the business, they do not rest upon any doctrine of estoppel, but are inferences of fact tracing their origin to the same source as the main power itself. So far as third persons are concerned, who can know only that which is open to be learned, they constitute part of the actual authority though commonly included under the description of apparent authority. In other words, so far as third persons are concerned, this apparent authority is included in the real authority."

Reed v. Hester (Tex.Com.App.) 44 S.W. (2d) 1107.

See, also, Thompson v. Keys (Tex.Civ. App.) 162 S.W. 1196, for definition of apparent authority of an agent.

Appellant stresses the recital in the contract in controversy known to appellee at the time that the same would be subject to approval by J. C. McCoy at appellant's home office in Tulsa, Okl. That stipulation necessarily implied authority in Whitson to negotiate sales in the first instance, and it does not imply that a contract of sale made by the agent who was employed for that purpose would not be approved by the home office, even though it should be said that as a matter of precaution a person in the exercise of ordinary diligence would wait for confirmation of the contract of sale before acting under it. And it is to be noted in this connection that no testimony was introduced to show appellant's disapproval of the contract after it was made until this controversy arose.

If appellees were forced to rely upon the rule of estoppel in order to sustain the defense urged, and if the rule of apparent authority does not obtain, then, even though it were shown that the contract was approved by J. C. McCoy and H. C. Scott, appellant's representatives in Tulsa, appellees would be required to go further and prove that such authority in them arose from some action of appellant's board of directors or stockholders. The unreasableness of such a requirement lies at the foundation of the doctrine of apparent authority of the agent.

We have carefully considered authorities cited to support the further contention that since the account sued on showed a prima facie right of recovery without resort to the primary agreement for the sale of items shown in the account, the vice in that agreement was no bar to the suit.

For the reasons stated in our original opinion, we do not believe those authorities are controlling in this case.

The motion for rehearing is overruled.

. On Further Motion for Rehearing.

Heretofore, by order made by this court, on March 29, 1935, appellant's motion for rehearing was overruled, per opinion filed. On April 26, 1935, that order was suspended, pending the decision of the Supreme Court [107 S.W.(2d) 550] in the case of State of Texas v. Standard Oil Company, appealed from the Austin Court of Civil Appeals and reported in 82 S.W.(2d) 402.

On June 16, 1937, a decision was reached by the Supreme Court in the latter case, in which the anti-trust statutes (Rev.St.1925, art. 7426 et seq.) involved in that suit, and in the suit now before this court, was upheld as against the attack made thereon on constitutional grounds. The same conclusion was reached by this court, as shown in our original opinion, of date January 18, 1935.

Accordingly, appellant's motion for rehearing is overruled per conclusions filed on March 29, 1935, which are still adhered to.