### HARKRIDER v. CAPPS. (No. 6929.)*

(Court of Civil Appeals of Texas. San Antonio. March 28, 1923. Rehearing Denied April 25, 1923.)

**I. Vendor and purchaser ⬅️342—Rights of purchaser on conveyance of wrong property by mistake stated.**

Where the purchaser of real property discovers that through the inadvertent mutual mistake of the agent and the purchaser himself a different property than that contracted for has been conveyed, he has a right of action to rescind, or in the alternative for damages occasioned by the mistake, and in the event of suit for specific performance he has the right to abate the purchase price to the amount of his damages under a plea of failure of consideration; in each event, however, his claim being against the vendor, and not against the vendor's agent.

**2. Estoppel ⬅️90(2)—Purchaser's acceptance of conveyance of property different from that agreed constitutes affirmance.**

Where the purchaser with full knowledge of the facts accepted a conveyance of property different from that which had been agreed to be conveyed, he placed himself in the position of having unconditionally affirmed the conveyance with all the conditions thereof, including his agreed assumption of specified outstanding obligations against such property.

**3. Vendor and purchaser ⬅️274(I)—Vendor's agent not liable for mistake in conveyance.**

Where by mutual mistake property other than that agreed upon was conveyed to the purchaser, and the latter, with full knowledge of the facts, accepted the conveyance, he could not defeat the collection of a vendor's lien note against such property owned by the vendor's agent, since the agent in no case was liable, even if his principal should be held accountable, and the agent's agreement to indemnify the purchaser from loss resulting from the mistake was without consideration and unenforceable.

**4. Bills and notes ⬅️140—Vendor's lien notes not open to attack for failure of consideration where renewed without objection.**

Where the purchaser of property discovered after receiving his deed that the wrong property had been conveyed, and by agreement with the vendor's agent accepted the conveyance and assumed the payment of a vendor's lien note owned by such agent, he cannot defend against the collection of such note on the ground of failure of consideration by reason of the agent's alleged promise to indemnify him from loss, where he renewed the note without requiring the agent to renew the alleged promise of indemnity or to acknowledge any obligation thereby; there being no showing of fraud, accident, or mistake.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by William Capps against C. W. Harkrider on a promissory note. Judgment for plaintiff, and defendant appeals. Affirmed.

Goree, O'Dell & Allen and Hampton Spiller, all of Fort Worth, for appellant.

McCart, Curtis & McCart, of Fort Worth, for appellee.

SMITH, J. The facts in the case are complicated, and the real questions obscured by many details of more or less materiality, which will not be set out except when deemed necessary. At the inception of the transactions in controversy, in 1911, appellant, Harkrider, and appellee, Capps, were friends and business associates. They resided in the city of Fort Worth. George S. Berry with whom Capps had had business dealings, had but recently moved from Fort Worth to another state, and appar-

---

⬅️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error dismissed for want of jurisdiction June 6, 1923.

ently had left some of his business matters in Capps' hands. He owned two dwellings in Fort Worth, one on Adams and the other on King street. At the instance of Capps, Harkrider inspected and agreed to purchase the Berry property on Adams street, at the price of $5,000, partly in cash and partly in notes assumed. The deal was closed, and deed was passed, but it was soon discovered that in this instrument the King street property, and not that on Adams street, had been conveyed by Berry to Harkrider. This mistake seems to have occurred through inadvertence, and not by any one's design. In purchasing the property Harkrider, as a part of the consideration, assumed certain vendor's lien notes, one of which was held by Capps, and the renewal of which is here sued on.

When Harkrider discovered the mistake whereby the wrong property had been conveyed to him, he inspected the property conveyed, and concluded that it was of less value than the property he had thought he was purchasing, and, being dissatisfied, took the matter up with Capps, with whom he dealt in the purchase. Capps expressed surprise and regret, and undertook by correspondence to have Berry correct the mistake, and convey to Harkrider the property on Adams street, as contracted for. This effort failed, however, and Capps and Harkrider then agreed that the latter would acquiesce in the substitution of property and keep that conveyed to him, and that Capps would "make good" to him any loss he might sustain by reason of the substitution. The deed passed in March, 1911, and the agreement mentioned followed a few weeks later.

It appears from the testimony of Harkrider, which is stoutly denied by Capps, that in 1915, four years after the former purchased the property, he undertook to require Capps to respond to his obligation, and that a settlement was exacted of Capps, who offered, as the "best he could do," to turn over to Harkrider a series of small notes, aggregating $500 or $600 and secured by a lien on other property than that in controversy. Harkrider testified that he "reluctantly" accepted these notes, but, apparently on account of his own lack of diligence, never realized anything from them. Three years later, in 1918, Harkrider renewed the note to Capps, and four years later, in 1919, sold the property in controversy for a recited consideration of $7,000. He testified that this recital in the deed was error, however, and that in fact he realized only $4,000 out of the consideration paid him. He also testified that during the seven years he owned the property he put improvements and repairs on it, of the value of $1,500, and that he kept it rented out most of the time, but he did not show what the rents had amounted to. There was a sharp conflict in the testimony as to some of the facts we have stated, but in such instances we have given Harkrider's version.

It seems to be undisputed that during the period covered by these transactions Capps continued to befriend Harkrider in substantial ways, without cost to the latter, and at his own expense. On one occasion, for instance, he went at his own expense to El Paso, over 600 miles away, and procured the dismissal of an indictment pending there against his friend Harkrider. This friendly interest continued for several years, until it was interrupted by a disagreement occurring shortly prior to the institution of this suit.

There was a jury, but at the conclusion of the trial the court directed a verdict for Capps, and from the resulting adverse judgment Harkrider brings this appeal.

[1, 2] Harkrider purchased the property from Berry, through the latter's agent, Capps. When he discovered the mistake by which a different property than that contracted for had been conveyed to him, he had a right of action to rescind, or, in the alternative, for damages occasioned by the mistake. He also had the right, in case Berry sued him for specific performance, to abate the purchase price with the amount of his damages, under a plea of failure of consideration. His cause of action, however, was in every event against Berry, his vendor. It was not against Capps, who acted merely as Berry's agent. So, when he accepted the property conveyed to him in lieu of the property he had contracted for, with full knowledge of the facts and without exacting any relief from or imposing any conditions upon Berry, his vendor, he placed himself in the attitude of having unconditionally affirmed the contract and all the conditions thereof, including his agreement to assume the specified outstanding obligations against the property. One of these was the note held by Capps.

[3] It is obvious from the record that Capps' activity in the transaction was prompted by his friendship for Berry and Harkrider, and the desire to help one sell his property and the other acquire a home. He had nothing to gain, financially, from the deal; for, while it is true he held a vendor's lien note against the property, the value of the property made this note secure, whether Harkrider assumed to pay it or not. And, while it is also true that the mistake in the conveyance was occasioned by his misapprehension of the facts, Berry, his principal, and not he, as the agent, was liable to Harkrider for the consequences of the error, and, under the peculiar facts, Harkrider could have enforced specific performance, or recovered damages, against Berry, the principal, but not against Capps, the agent. In this situation Capps was under no legal obligation to satisfy or indemnify Harkrider and could obtain no advantage from assuming that obligation; and so, if it is true, as Harkrider contends, but Capps vigorously denies, that the latter agreed to indemnify the former against loss resulting from the mistake, the agreement

was without consideration, and therefore unenforceable. Robertson v. Marsh, 42 Tex. 149.

[4] Harkrider contends that the promise by Capps to indemnify him was a part of the consideration inducing him to assume the payment of the note sued upon, and he pleads a failure of this consideration as a defense to the payment of the note finally executed in renewal of the original obligation. The premise laid for this defense, however, is a false one. The original note was the property of Capps, and its payment had been assumed by Harkrider, prior to the alleged promise to indemnify, and was at that time a valid outstanding obligation, wherefore its execution could not have been induced by, and no part of the consideration therefor could have been based upon, the subsequent promise to indemnify. The renewal of the original note was executed by Harkrider in the absence of Capps, at the instance of the latter's agent, without requiring Capps to acknowledge or reaffirm the alleged promise of indemnity, or to acknowledge any obligation to him, and therefore the claim that the renewal was executed in consideration of any promise or representation of Capps is without foundation. It was executed, too, long after the adjustment which Harkrider testified was effected with Capps in 1915. The result is that the renewal note was executed in the absence of any fraud, accident, or mistake, or inducing statements, promises, or agreements, and should be enforced according to its terms as written. The defense of failure of consideration was not available to defeat the payment of either the original note or the renewal thereof. Hunter v. Lanius, 82 Tex. 677, 18 S. W. 201.

Many questions are sought to be injected into the case. but we can see no reason for discussing all of them. We think, under all the facts disclosed in the record, the court below was justified from every angle of the case to direct a verdict for Capps, as was done.

The judgment is affirmed.