## CHAMPLIN REFINING CO. v. STREET.

### No. 3946.

Court of Civil Appeals of Texas. Amarillo.

Jan. 25, 1933.

Rehearing Denied March 1, 1933.

904

R. T. Correll, of Perryton, and Works & Bassett, of Amarillo, for plaintiff in error.

Hoover, Hoover & Cussen, of Canadian, Allen & Allen, of Perryton, and M. H. Gordon, of Woodward, Okl., for defendant in error.

HALL, Chief Justice.

L. O. Street, a resident citizen of Oklahoma, owned several town lots in Farnsworth, Ochiltree county, Tex., upon which he desired to have storage tanks for petroleum products, as well as a filling station, erected. On the 21st day of April, 1927, he entered into a written contract with the appellant refining company, for the construction and erection of said improvements upon said lots. The lots are a part of a block situated between the highway and the railroad right of way running through said town. The storage tanks and improvements were near the railroad track and the filling station faces the highway. The contract provided that the rights of the parties thereunder should exist for three years, beginning on June 1, 1927. That no rent should be paid to Street for the use of the lots during said period. It bound the refining company to purchase and install on lot 9 two storage tanks of not less than 11,000-gallon capacity each, to be ready for use by June 1, 1927. Paragraph 3 provided that at the expiration of the three-year term Street would purchase, for cash, the storage tanks and all other equipment which the company might ship to Farnsworth during the life of the contract for use in operating the agency at that point; the purchase price being the original cost of such property, plus freight and expenses of installation. It is further provided in section 3 that the failure of Street to purchase the property as stipulated should be construed as an option to the refining company to purchase said lot 9 for the sum of $200 and that Street would convey the property by warranty deed. That it was also an option to the refining company to lease the service station on lot 9 for an additional period of five years at a rental not to exceed 1 per cent. of the cost of the station, plus a reasonable valuation of the ground on which it is located. Paragraph 4 provided that Street should purchase a portable steel service station to be located on lot 8 and to be properly installed and ready for operation not later than June 1, 1927. Paragraph 5 provided that the refining company would furnish the gasoline pump, the underground tank, and the lubricating oil pumps necessary for the successful operation of the service station, provided, however, that Street would install a V-20 Curtis air compressor and all other equipment necessary for the operation of the station, and that further equipment

furnished by the refining company should constitute all the loaned equipment to be used there. By paragraph 6 the refining company appointed Street as its agent to operate its bulk and service stations. Paragraph 8 recites that the refining company employs Street as its agent under the terms and conditions of another agreement made between them, "which is attached to and made a part of this contract"; but it was not attached and is not in the record. By paragraph 9 Street agrees to operate the agency in accordance with the rules and regulations issued by the refining company and comply with all instructions governing the operation and maintenance of the bulk storage and service stations, and further stipulates that should Street violate the terms of the contract, the refining company at its option might cancel and revoke the agency without violating the terms of the lease and optional agreement conveyed. That Street should pay all the expenses incident to operating the bulk station and service station.

The refining company instituted this suit January 14, 1931, alleging a breach of the contract, and filed its first amended original petition March 28, 1932, upon which the case was tried. By its amendment it set up the execution of the original contract April 21, 1927, setting forth the substance of the various provisions as stated above, and further alleged that the contract was executed at Enid, Okl., and that the plaintiff below, being plaintiff in error here, and its said representatives, were ignorant as to the division into lots of the contemplated location for said bulk station and service station as the same existed upon the ground, but that the defendant knew of such subdivision and designation of the several lots in block A of said town of Farnsworth. That plaintiff is now advised that said block A is a long strip of land about 100 feet wide, extending in a northeasterly and southwesterly direction between the tracks of the Santa Fé Railroad on the northwest and the public highway leading from Spearman to Perryton. That this strip of land is divided into lots numbered consecutively from the northeast to the southwest and that Street owned all of the lots numbered from 1 to 12, inclusive, and also owned a grain elevator situated on or about lot 8 of said series of lots and near the railroad track. That there was also situated on said lot 8 an office building. That lot 9 is immediately southwest of lot 8; lot 10 immediately southwest of lot 9; lot 11 immediately southwest of lot 10; and that there was a warehouse on said lot 11. That each of said lots is 50 feet wide, and it was agreed that the bulk storage station should be located on one of the lots and the service station on the lot adjoining same on the east. That in reducing their contract to writing, there was a clerical error made by the draftsman, and by mutual mistake of all parties, lots 8 and 9 were

mentioned therein instead of lots 9 and 10. That by mutual mistake, lot 9 was designated as the location for the bulk station instead of lot 10, which erroneous designation of lot 9 appears in all of the paragraphs of said contract. That instead thereof, there should have been written lot 10. That in the latter portion of subdivision 3, in referring to the option given by defendant to plaintiff to lease the gasoline service station, lot 9 is properly designated and such service station was, in fact, located on said lot 9, but that the bulk storage station was on said lot 10. That in keeping with said real and true contract, the refining company placed on said lot 10, as directed by Street through his authorized agent and representative, Bradley Anderson, the equipment which is itemized in the petition and separately valued, aggregating $4,168.69. Plaintiff refining company further alleged that on May 31, 1927, it entered into a written contract with Bradley Anderson, who was the agent for and acting on behalf of Street, providing for the operation and conduct of said service station. That Street still resided in Oklahoma and that Anderson was fully authorized and empowered by him to represent him in the execution of said contract and the performance of said services.

That in the execution of said contracts, the refining company, as party of the first part, and Bradley Anderson, as party of the second part, executed another written instrument, designated "Loaned Equipment Contract," on June 15, 1928, wherein plaintiff company agreed to furnish Anderson for a period of three years, and thereafter until terminated by either party by thirty days' previous notice, one Butler model 71 gasoline pump, hand operated; one 550-gallon underground tank; two Tokhein 60-gallon lubricating tanks, to be used by the second party in the sale of petroleum products manufactured by plaintiff refining company. In said contract lot 8 is named as the location for installing said property, but lot 8 was designated by mutual mistake and error and the same should have been lot 9.

That the act of Bradley Anderson in executing said above contracts as the agent of Street has been ratified, confirmed, and approved by the latter up to the time of the repudiation and breach of said contract by Street. That plaintiff furnished all the equipment, tanks, and other material required by said contracts and placed the same upon the ground in the locations pointed out and designated by defendant, acting by and through his agent, Anderson. That after being so located upon the ground, said equipment was used and operated under the contract with the approval of the defendant by Anderson, whereby defendant has waived any mistake as to the numbers of said lots and is estopped from taking an advantage of any such mistake by having pointed out upon the ground the location and having received the benefits therefrom.

That on or before the expiration of the three-year term stated in the contract and at the expiration of which time Street was obligated to purchase the equipment of said storage station or his failure at said time to do so would constitute an option to plaintiff to purchase the lot for $200, Street repudiated and breached the contract, in that he failed and refused, about May 23, 1930, to so purchase said equipment or to recognize plaintiff's option to purchase the lot; he, in fact, having prior thereto rendered himself incapable of complying with the contract by having deeded and conveyed both of said lots to other parties, lot 10 being conveyed to Sharon Grain Company and lot 9 to Bradley Anderson on or about March 8, 1929.

Having been informed that Street had conveyed lot 9 to Anderson, plaintiff, in an effort to protect itself and to continue to sell its products in and about Farnsworth, arranged to take over the service station by securing a conveyance of the front, or south, portion of said lot 9 on which the service station was located, after which it conducted the station without the aid and assistance of defendant and his representatives. That in connection with so adjusting said service station matter, after such conveyance of said lot 9 by defendant to Anderson, plaintiff sought to acquire all of said lot 9 and was ready, willing, and able to have purchased said lot 10 on which said bulk station was located in fulfillment of its said option, but learned that lot 10 had already been conveyed with its permanent structures and equipment and was informed by Anderson that, its contract with defendant having been burned, plaintiff would have to work out as best it could its rights with Street as to the remainder of said lot 9 and all of lot 10.

That plaintiff demanded compliance with the contract and defendant failed and refused to perform his obligations.

Plaintiff alleges that if it should be held that the operation of the service station by Anderson was not for and on behalf of Street, that defendant is not relieved from liability to plaintiff on account of his acts in the premises; such operation of the service station being severable from defendant's obligations and liabilities as to the lot on which the bulk and storage tanks were located.

The prayer is for judgment against Street in the sum of $4,168.69, with 6 per cent. interest from June 1, 1930, upon the contract, or in the alternative for that amount as damages for breach thereof, because of the conversion and sale of the items listed in the contract.

The contract declared upon, the substance of which is set out first above, provides that the equipment furnished by the refining com-

pany should be used for the exclusive distribution and sale of the products manufactured by the refining company so long as Street continued to be the agent of the refining company.

By his answer Street demurred generally to the plaintiff's petition and specially to the effect that the contract sued upon was shown to be illegal and void because it was contrary to public policy and made in restraint of trade, in that it required Street to sell only Champlin products.

By further exception it is insisted that the petition shows that the contract was unilateral, in that it gave the plaintiff power to revoke the agency created without violating the law or the optional agreement therein contained. That it was insufficient because it was an action based upon the failure of Street to convey real estate at an agreed price; the true measure of damages being the difference in the value of said real estate and the price at which the plaintiff, under the contract, was at liberty to purchase it.

In addition to a general denial, Street alleges that he complied with all the terms of the written contract and that plaintiff had violated the contract by appointing one E. D. Grebe on the 15th day of June, 1928, to sell Champlin products in the city of Farnsworth, after having by the contract awarded Street the exclusive right and agency to sell said products. That at no time prior to the institution of this suit had the plaintiff notified defendant that it desired to exercise its option and purchase said lot for the sum of $200, but on the contrary, retained possession of said property, both real and personal, using the same and enjoying the rents and revenues thereof and is estopped by its own acts to exercise its option. That after the execution of the contract and long prior to the institution of this suit by plaintiff and after plaintiff had breached the contract as hereinbefore stated by turning its oil business over to Grebe, plaintiff, with full knowledge of the fact that defendant had deeded lot 9 to Bradley Anderson, defendant, at the special instance and request of plaintiff, deeded said lot 9 by quitclaim conveyance to plaintiff, the consideration being a full and complete settlement and relinquishment of all obligations and liabilities which the plaintiff might have against the defendant by reason of said contract, and therefore all matters in litigation were thereby settled. That at said time plaintiff was in possession of said lot and is still in possession of same and has never offered to reconvey the same or to do equity in the matter, all of which the defendant pleads as a full and complete settlement and bar to the right of plaintiff to recover against him any sum whatever. That the mistake in conveying lot 9 was not discovered until after defendant had conveyed lot 10 to Sharon Grain Company, their elevator being on lots 7 and 8. That there was no intention to convey to the elevator company the lot upon which the tanks were located, but it was intended by the quitclaim deed to convey to plaintiff the identical ground upon which its tanks were located. That defendant did not know of the mistake until after this suit was instituted, when he offered to correct the error by procuring for plaintiff a conveyance of lot 10, and was in a position at that time to do so, but plaintiff refused to accept a deed to lot 10 and thereby correct the mistake and advised defendant that the business at Farnsworth had decreased and was not paying, that it desired to get out of there and refused to correct the error, although they were willing to accept the deed and did accept it as hereinbefore stated in full settlement of all matters in controversy and for all claims against the defendant, and having done so and having refused to correct the error, are now estopped to disavow its own acts and exercise an option long since abandoned.

The defendant denied that Bradley Anderson was ever his agent or was ever in any manner authorized to represent him in any of the matters and things charged in the petition.

The refining company filed a supplemental petition denying that Bradley Anderson was its agent until defendant had breached his contract, after which Anderson become the direct agent of plaintiff for the distribution of its products at Farnsworth. The allegations of settlement were denied, as well as the ability of the defendant to convey the title to lot 10. It is alleged that there was no consideration as a basis for any settlement or for waiver on its part of its claim against defendant. That possession of or use of the bulk station by plaintiff, since defendant so breached his contract and rendered himself unable to fulfill the same, had been by way of sufferance and was brought about by defendant's own wrong.

The case was tried to the court without a jury and resulted in a judgment that the plaintiff in error take nothing as against Street and decreed that plaintiff in error pay all costs.

There are no findings of fact or conclusions of law in the record.

■ In the absence of findings by the trial judge, it is the duty of this court to affirm the judgment upon any theory which may be supported by pleadings and evidence.

■ The defendant in error insists that the judgment is proper because there is a want of mutuality in the contract.

We cannot assent to this proposition. The contract, the substance of which is set out in the first part of this opinion, imposes obligations upon both parties, both dependent and independent. Street was to surrender the

possession of the lots for three years, rent free. It was his duty to furnish and install a V-20 Curtis air compressor and other equipment necessary in the operation of the filling station. He was also required to provide a steel service station and to install it ready for operation by June 1st. It provided that he should represent the company as its agent and that his duties were to be performed in accordance with instructions thereafter to be given. Some of the obligations resting upon the refining company were to furnish two storage tanks and to install them upon the premises, which required the company to provide a concrete base upon which the steel support for the tanks would rest and to provide further equipment, such as gasoline pumps, lubricating oil pumps, an underground tank, etc. At the expiration of three years Street had the option of purchasing the improvements and equipment at a stated price. Failing in this, the company had the option of acquiring the title to the lots at the stipulated price of $200. The equipment to be furnished was itemized in the contract. Since the contract imposed mutual and dependent obligations upon both parties, it was not void for want of mutuality. The fact that the contract did not state the amount of gasoline and other products to be furnished did not render the contract uncertain or void for want of mutuality. Grand Prairie Gravel Co. v. Joe B. Wills (Tex. Civ. App.) 188 S. W. 680; Cox, Inc., v. Humble O. R. Co. (Tex. Com. App.) 16 S.W.(2d) 285.

■ Nor do we agree with defendant in error that the contract was void as being in violation of the provisions of the national and state anti-trust laws (see 15 USCA § 1 et seq.; Vernon's Ann. Civ. St. art. 7426 et seq.). It was a lease contract and an agency contract combined under which one party could sell, and the other purchase, products during a definite period, at the expiration of which time certain options accrued to each under stated conditions. It provided that the equipment furnished by the refining company should not be used except for the exclusive distribution and sale of petroleum products manufactured by the second party. There is no territorial limit mentioned. Since the company had a three-year lease upon the lot, it certainly had the right to limit its own agent in the character and kind of products to be sold upon its own property. It appointed an agent to operate its bulk and service station described in the contract and to distribute and sell Champlin products only, so long as he remained its agent. In our opinion this does not violate the anti-trust statutes. State v. Gulf Refining Co. (Tex. Civ. App.) 279 S. W. 526; State v. Texas Company (Tex. Civ. App.) 280 S. W. 1119; State v. Producers' Refining Company (Tex. Civ. App.) 281 S. W. 1118.

The plaintiff in error insists that the contract is divisible and alleges that the operation of the service station was severable from defendant's obligations as to the lot where the bulk tanks were situated.

■■ Whether a contract is entire or separate depends primarily upon the intention of the parties. There is nothing in the contract, considered from its four corners, which would indicate that the parties ever intended that it should be severable. The plaintiff's prayer for relief and the pleadings of the defendant treat it as an entire contract. Their conduct is a practical construction of the instrument by the parties and indicates that the idea of severability is an afterthought. No evidence was introduced to sustain that theory.

■■ Defendant in error insists that the judgment may be sustained upon his contention, both pleaded and proven, that the controversy between the parties had been compromised and settled.

On the 20th day of June, 1928, Street and wife conveyed lot 9 to Bradley Anderson, and while the original contract designates Street as the agent of the refining company to sell its products at Farnsworth, Street testified that he never acted as the agent of plaintiff and that plaintiff gave the agency to Anderson. The record contains an agency contract between plaintiff and Anderson, executed on the 31st day of May, 1927, in which Street is not mentioned, and it appears that Anderson was in actual operation and management of plaintiff's business at Farnsworth; yet in the face of these facts plaintiff insists that Street was the real agent and not Anderson. It is significant that Anderson did not testify in person or by deposition. The original contract first above set out recites that the refining company employs Street as its agent "under the terms and conditions of another agreement made and entered into by the parties hereto and identified by copy of the agreement being attached and marked Exhibit A and made a part of this agreement." No such agreement as "Exhibit A" appears in the record, and it seems to be conceded that no agency contract was ever executed by the refining company appointing Street its agent. The only inference from these facts is that the original contract was abandoned or changed in the particulars mentioned.

The testimony with reference to a compromise and settlement shows that just about the time Street and wife conveyed lot 9 to Anderson, they also conveyed to W. A. Teter, his wife, and to A. C. Teter, a firm designated as the Sharon Grain Company, lots 7, 8, 10, 11, 12, and 13 in the town of Farnsworth for a recited consideration of $5,000 and other valuable considerations. Street testified that he sold all of his property in Farnsworth to Sharon Grain Company and to Anderson about the same time. That soon thereafter Preston Rathburn, representing the refining company, came to defendant's office in Wood-

ward, Okl., bringing a quitclaim deed, and requested him to sign it, which conveyed to the refining company said lot 9. Street said that Rathburn wanted the deed signed "to settle our affairs—our business." Rathburn did not testify and the quitclaim deed is not in the record.

It further appears from the record that Anderson quit working for the refining company after about one year, whereupon the company checked him out at Farnsworth and appointed one Grebe as its agent there, without consulting Street in any way. Street admitted that Anderson had worked for him in connection with his elevator at Farnsworth, but had never represented him and was not authorized so to do at any time in any other matter and especially in regard to the contract with the refining company. The fact that matters between the parties had not been fully settled, and all the terms of the original contract had not been complied with, was a sufficient consideration to support a compromise and settlement upon the basis contended for by Street.

Plaintiff in error says that while the court listened to the testimony of Howard Street and L. O. Street as to an alleged conversation in the last part of January, 1931, in the State Hotel at Woodward, that testimony was finally stricken out by the court. That may be true, but according to Street's testimony the conversation which resulted in the execution by him of a quitclaim deed to lot 9 is, according to the record, an entirely different conversation and the judgment may therefore be sustained upon the plea and proof of settlement.

It further appears from the record that the refining company is in possession of the oil truck, galvanized iron barrels, and other equipment which was furnished and which Anderson had used in conducting the business. This equipment was not tendered by the refining company and no offer was made in its pleadings or otherwise to account for the same.

The record does not sustain the eleventh assignment of plaintiff in error, which recites that the defendant had sold and conveyed the bulk station lot, with all of said permanent fixtures thereon, and after all of the equipment to be used therewith had been disposed of so he had thereby rendered himself incapable of complying with the conditional option.

It is said in 39 Cyc. 1252: "A mistake as to the location of the realty contracted for is a mistake as to the identity of the subject-matter of the contract and avoids the same."

Both sides plead that there was a mutual mistake in describing the lots as 8 and 9 and that a proper description would have been lots 9 and 10. It is held in Harkrider v. Capps (Tex. Civ. App.) 250 S. W. 1093, that where a purchaser of real property discovers that through the inadvertence and mutual mistake of the agent and the purchaser himself a different property than that contracted for has been conveyed, he has a right of action to rescind or in the alternative to sue for damages occasioned by the mistake, and in the event of suit for specific performance he has a right to abate the purchase price to the amount of his damages under a plea of failure of consideration. The plaintiff has resorted to none of these remedies in this case, but its suit is based upon a contract which, according to the pleadings and admissions of both sides, is void at least in so far as it attempts to create rights as to lot 8.

The record further shows that after part of the improvements had been placed upon lot 10 by mutual mistake and said lot had been conveyed to the Sharon Grain Company, Street offered to execute a new deed conveying lot 10 to the refining company and have the Sharon Grain Company relinquish its rights thereto, but that the refining company refused to accept a correction deed and insisted upon prosecuting this suit.

Under the case as presented by the pleadings of both parties and after considering the evidence introduced, we think the court has rendered the only judgment which properly could have been rendered, and it is affirmed.