WOOD v. TEXAS ICE & COLD STORAGE
CO.   (No. 7218.)

(Court of Civil Appeals of Texas. Dallas.
Nov. 28, 1914.)

1. MONOPOLIES (§ 17*)—"CONSPIRACY IN RE-
STRAINT OF TRADE"—SALE OF GOODS.

A contract whereby a retail ice dealer
agreed to purchase all of his ice from a certain
manufacturer and wholesaler so long as the lat-
ter could supply his demands, and the whole-
saler agreed to sell a certain quantity and as
much more as possible to the retailer at a fixed
price, unless the market price should go below
that, when the market price should prevail, is
contrary to Rev. St. 1911, art. 7798, subd. 1,
which declares that it shall constitute a con-
spiracy in restraint of trade when any persons
engaged in buying or selling any commodity
agree to refuse to buy such commodity from, or
sell it to, any other person; it not being neces-
sary that the agreement be to refuse both to
buy and sell.

[Ed. Note.—For other cases, see Monopolies,
Cent. Dig. § 13; Dec. Dig. § 17.*

For other definitions, see Words and Phrases,
First and Second Series, Conspiracy.]

2. MONOPOLIES (§ 17*) — CONTRACTS IN RE-
STRAINT OF TRADE—PURPOSE.

The fact that the retailer was to receive
the benefit of the market price, whatever it
might be, does not render the contract lawful,
since the intent of the parties and the actual ef-
fect of the contract cannot save it if it is il-
legal under the terms of the act.

[Ed. Note.—For other cases, see Monopolies,
Cent. Dig. § 13; Dec. Dig. § 17.*]

3. MONOPOLIES (§ 17*) — CONTRACTS IN RE-
STRAINT OF TRADE—SALE OF GOODS—PAR-
TIES TO CONTRACT.

The fact that one of the parties was a
wholesaler and the other a retailer takes the
contract out of the statute.

[Ed. Note.—For other cases, see Monopolies,
Cent. Dig. § 13; Dec. Dig. § 17.*]

Appeal from District Court, Dallas County;
Kenneth Foree, Judge.

Action by H. C. Wood against the Texas
Ice & Cold Storage Company. Judgment for
defendant, and plaintiff appeals.   Affirmed.

George Sergeant and Callaway & Mathis,
all of Dallas, for appellant. Etheridge, Mc-
Cormick & Bromberg, of Dallas, for appellee.

RASBURY, J.   Counsel's statement of the
nature and result of the suit contained in
appellant's brief is not only clear and con-
cise, but is accepted by counsel for appellee
as correct, and we accordingly adopt same.
It follows:

"Appellant, a retail dealer in ice in the city
of Dallas, sued appellee, a manufacturer of and
wholesale dealer in said commodity, on a
* * * contract entered into by the parties,
whereby appellee agreed to sell appellant, at
$3 per ton, 'as much as six tons, or what his
trade may demand, of ice per day,' and as much
more as appellee might be able to supply without
conflicting with other arrangements; and appel-
lant agreed 'to make all his purchases from ap-
pellee' during the term of the contract, provided
appellee should be able to furnish the quantity
of ice needed.   The contract also contains a
provision that appellee shall meet the market
price in case same should fall below $3 per ton.
The petition charges a breach of the contract

upon the part of appellee, in that it refused to
sell appellant any more ice at the contract
price, and that appellant was consequently com-
pelled to go elsewhere in the market and pur-
chase ice for his trade at an increased price.
He prays damages in a sum equal to the dif-
ference between the contract price and the price
actually paid by him for ice, laying the amount
of damages at $1,163.25. A copy of the contract
sued on was attached to and made a part of the
petition, which, omitting unimportant and for-
mal portions, is as follows:

" 'Dallas, Texas, Oct. 30, 1912.

" 'This contract and agreement, this day enter-
ed into by D. M. Jones, acting for the Texas
Ice & Cold Storage Co., hereinafter called first
party, and H. C. Wood, hereinafter called sec-
ond party, all of Dallas, Texas, witnesseth:
That the first party agrees to sell the second
party as much as six tons, or what his trade
may demand, of ice per day, and as much more
as the first party is able to supply, without con-
flicting with other arrangements, and the sec-
ond party agrees to make all his purchases from
the first party during the term of this contract,
provided the first party is able to furnish same
as above indicated. The price to be paid for all
purchases during the term of this contract,
which is one year beginning October 30, 1912,
is three dollars ($3.00) per ton on platform, lo-
cated at 2225 Cedar Springs St., of first party,
unless the general market price of ice in the city
of Dallas goes below said price, then in that
event, during such time, the first party agrees
to meet such price so long as first party operates
their plant. [Here follow numerous provisions
relating to what shall be done in case of closing
appellee's factory, the quality of ice to be fur-
nished by appellee, and certain other mutual and
reciprocal duties of both parties unnecessary to
detail.]   Witness our hands in duplicate.

" 'H. C. Woods,

" 'Texas Ice & Cold Storage Co.' "

[1] The only question involved in the ap-
peal is whether the contract quoted consti-
tutes a conspiracy in restraint of trade under
subdivision 1 of article 7798, R. S. 1911.
Stripped of verbiage as applied to the instant
case, said subdivision 1 of said article, in
substance, declares that it shall constitute
a conspiracy in restraint of trade when two
persons (firms, corporations, or associations)
engaged in buying or selling any commodity
agree to refuse to buy such commodity from
or sell it to any other person, firm, etc.   Such
being the literal language of the statute, the
contract in question, in our opinion, comes
precisely within the statutory definition of
the acts denounced thereby, since the declar-
ed purpose of the contract is to prevent ap-
pellant from buying ice from any other per-
son, firm, corporation, or association.   By
the statute it is unlawful for two persons to
agree that one of them will buy from the
other exclusively of a given commodity as it
is in like manner unlawful for one of them
to agree to sell exclusively to the other a
given commodity.   It is unlawful to do either
or both, and it is not necessary to do both
in order to constitute the offense, and the
reason therefor is the statute itself.   A re-
cent case identical in principle and quite
similar in fact is Star Mill & Elevator Co.
v. Ft. Worth Grain & Elevator Co., 146 S.

W. 604. There appellant undertook to supply appellee a stipulated number of bushels of grain on condition that appellee bought exclusively of "legitimate dealers," such as appellant, and not from farmers, brokers, or grain elevators. The difference in the facts of the two cases is that by the contract in the case cited the appellee could buy from dealers of like nature with appellant, but not from others, while by the contract in the instant case, appellant agreed to buy wholely from appellee.

[2] But it is argued by counsel in the instant case that the statute does not apply because such contract has no tendency to destroy competition between the parties. In short, that it permits appellant to buy ice at all times at the prevailing market price. Such might be literally true and yet the prevailing market price under such agreement, if general, might create, or tend to create, restrictions in trade or commerce, or destroy competition, which is the declared purpose of other portions of the act to prevent. Article 7796, R. S. 1911.

The letter of the act, as we have said, being so plain and the difficulty of determining just how such agreements may affect trade or commerce being so manifest, a fair rule of interpretation is that announced in Star Mill & Elevator Co. v. Ft. Worth Grain & Elevator Co., supra, where it is said:

"The purpose, we think, as indicated by the scope of the statute and the language used was to denounce as illegal, without reference to the intent of the parties and without reference to its actual effect, every agreement or understanding between parties engaged in buying any commodity, whereby they, or either of them, was to refrain from buying such commodity from any one having same for sale."

[3] Counsel for appellant, however, further argues that subdivision 1, under which this proceeding was defended, is limited to those persons, firms, etc., who are engaged in the same character of business. In short, that before the statutory rule may be applied to the case at bar, it would have to be alleged and shown that appellant and appellee were both in the wholesale ice business, or the retail ice business. We believe the language of the subdivision is susceptible of no such narrow and restricted construction, and we have been unable to find any reported case that goes to that extent, though counsel for appellee cites Nickels v. Prewitt Auto Co., 149 S. W. 1094, in support of the construction sought to be placed upon the statute. We conclude, however, there is nothing in the opinion to warrant that deduction. After reciting the fact that the case made out in the court below failed to show a monopoly, which was the defense urged, as defined by other provisions of the "anti-trust act," and after reciting that the pleadings and the evidence were insufficient to show a conspiracy in restraint of trade as defined by subdivision 1 under discussion, the opinion states that:

"If it had been alleged and proved that the Prewitt Auto Company and appellant Nickels were each and both engaged in the business of buying and selling automobiles, a different question would be presented, and we might hold that the contract was in violation of the first subdivision of article 7798; but no such allegation or proof was made."

The opinion, at another place, also holds that the pleading and proof were insufficient, "because it was not alleged or proved that both or either of the parties to the contract were engaged in buying or selling automobiles." The questions above, and relied upon by appellant, in our opinion sustain and support the conclusions reached by us in the instant case, and that they form no substantial basis for the claim that that court intended to hold that both Nickels and Prewitt Auto Company should be engaged exclusively in either the wholesale business or the retail automobile business, in order to come within the provision of said subdivision 1. According to such construction, wholesalers would be permitted at will to contract with retailers against the use of any commodity other than that of the particular wholesaler, and by which the very thing the act sought to prevent would be rendered judicially easy of accomplishment, notwithstanding the plain and unambiguous language of the act.

Much could be said concerning the reason for and the policy of the law, as disclosed by repeated and able constructions thereof, but to do so would be profitless, and for that reason we content ourselves with directing attention to Mansur v. Price, 22 Tex. Civ. App. 616, 55 S. W. 764, a case similar in many respects to the case at bar.

Finding no reversible error in the record, the judgment is affirmed.