**COX, Inc., v. HUMBLE OIL & REFINING CO.** (No. 1043—5238.)

Commission of Appeals of Texas, Section B. April 24, 1929.

Touchstone, Wight, Gormley & Price, of Dallas, for plaintiff in error.

Davis, Synnott & Hatchell, of Dallas, for defendant in error.

LEDDY, J. We adopt the following statement of the case made by the Court of Civil Appeals [7 S.W.(2d) 163]:

"This suit (commenced March 3, 1923) by appellee against appellant was for damages in the sum of $9,000, which appellee alleged it suffered because of a breach by appellant of a parol contract alleged by the former to have been entered into between them or on about April 15, 1922 (appellant acting by its 'duly authorized agent,' one Monroe), and to have been as follows:

" 'That plaintiff (appellee) would purchase all gasoline to be used by plaintiff in its business of operating a filling station on the following terms: That it would pay to the defendant (appellant) for such gasoline three cents less than the retail price of such gasoline; that such retail price would be considered to be two cents less than the retail price posted by the Texas Company and the Magnolia Petroleum Company in Dallas, Tex.; that said contract would continue in effect as long as the latter companies should grant what is known as a commercial discount, which is a term used in Dallas and vicinity by the oil trade to indicate a discount to users of gasoline in quantities, as, for instance, a business concern using a fleet of trucks.'

"Appellee alleged that, after it and appellant so contracted, they 'continued to operate

under such agreement up to and including April 28, 1922, upon which date the defendant refused to proceed under such contract,' and, after alleging that the Texas Company and Magnolia Petroleum Company had 'continued up to this date (quoting) to grant the "commercial discount," ' alleged as follows:

"'That for gasoline purchased between April 28, 1922, and May 27, 1922, this plaintiff has settled with the defendant on the basis of said agreement. That between May 27, 1922, and April 15, 1923, plaintiff has used in its filling station 350,000 gallons of gasoline. That plaintiff would have used in its filling station 450,000 gallons of gasoline had defendant complied with its contract and furnished the gasoline as agreed, for the reason that it would have been unable (able?) thereby to undersell its competitors. That at all times during the period between May 27, 1922, and March 1, 1923, the usual and customary discount granted to purchasers of gasoline at wholesale upon the market in Dallas was 3 cents per gallon. That the difference between the market value of gasoline at wholesale in Dallas and the agreed price under the agreement hereinabove set out was 2 cents per gallon on each day upon which plaintiff was compelled to purchase gasoline.'

"Appellant's answer consisted of a general demurrer, a general denial, and a special plea denying that it or any one authorized to act for it contracted as al ~d by appellee; and by a cross-action appe ~t sought a recovery against appellee of $61 ,6, which, it charged, was the balance due it on an open account for goods it sold and delivered to appellee during a period beginning April 15, 1922, and ending May 27, 1922. On special issues submitted to them the jury found as follows: (1) That appellee and appellant, the latter acting by its agent one D. T. Monroe, on or about April 15, 1922, entered into an agreement whereby appellee was to purchase of appellant the gasoline it (appellee) sold at retail. (2) Said agreement provided for a differential to appellee of three and two cents, or five cents, 'under the posted market prices of the Magnolia Oil Company, the Texas Company, and other big oil companies.' (3) By the terms of the agreement, the differential was to continue 'for a period (quoting) of one year, or as long during such year as the Texas Company and Magnolia Petroleum Company should grant what is known as the commercial discount of two cents. (4) That said Monroe, at the time he acted for appellant had 'apparent authority (quoting) to make such agreement as he made.' (5) That neither the Texas Company nor the Magnolia Petroleum Company 'effectively discontinued such commercial discount at any time during the year following the making of such agreement.' (6) Appellant, 'prior to the cessation of purchases' by appellee, 'under the alleged contract, refused to continue selling' appellee on the basis of the alleged two and three or five cents per gallon differential. (7) Appellee was damaged in the sum of $3,500 'by reason of the refusal' of appellant to furnish gasoline to it 'at the alleged differe' ial of 5 cents per gallon during the year following the making of said agreements.' The court having rendered judgment in fa or of appellee against appellant for the sum found by the jury, the latter prosecute this appeal."

The Court of Civil Appeals sustained defendant in error's assignment complaining of the action of the trial court in submitting to the jury the issue as to Monroe's apparent authority to execute the contract sued upon on the ground that it was without pleading to support it.

Plaintiff in error's petition contained the averment that the contract was made by defendant in error "through its duly authorized agent Monroe." We think this allegation was sufficient to justify the submission of the issue as to whether Monroe had been clothed with apparent authority to execute the contract made the basis for plaintiff in error's cause of action.

"Duly," in legal parlance, means according to law (Brownwell v. Town of Greenwich, 114 N. Y. 518, 22 N. E. 24, 4 L. R. A. 685; Robertson v. Perkins, 129 U. S. 233, 9 S. Ct. 279, 32 L. Ed. 686); in accordance with what is right, required, or suitable, fittingly, becomingly, regularly (Citizens' State Bank v. Morse, 60 Kan. 526, 57 P. 115; Beale v. Commonwealth, 25 Pa. 11; Dixie Grain Co. v. Quinn, 181 Ala. 208, 61 So. 886).

The primary meaning of "authorized" is to empower, to give a right to act. Board of Com'rs of Sedgwick County v. Toland, 121 Kan. 109, 245 P. 1019.

Plaintiff in error's allegation that the contract was made by defendant in error's duly authorized agent is broad enough to include any act or conduct on the part of defendant in error which gave the agent the right to act for it in the making of the contract alleged. If defendant in error' clothed its agent with actual or apparent authority to make the contract alleged, in either even! he was duly authorized to act in its behalf in the making of a valid and binding contract, as the act of an agent who has been clothed by his principal with apparent authority over the subject-matter is as legally empowered to bind the principal as if he had been invested with actual authority.

Having determined that the Court of Civil Appeals erred in reversing the judgment of the trial court on the ground assigned, it becomes necessary for us to ascertain whether such judgment of reversal can be sustained under any other assignment of error urged by defendant in error in that court. Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185.

It is insisted that the contract sued upon is not enforceable because it is not reasonably definite and certain in its terms an

provisions. We do not think the contract alleged or proven is subject to the objection made, as it is specifically alleged that plaintiff in error agreed that it *"would purchase* all gasoline to be used by plaintiff in its business of operating a filling station on the following terms," etc.

Defendant in error cites numerous cases holding a contract is unenforceable for want of consideration and mutuality where the seller agrees to supply the needs of the buyer but where there was no reciprocal obligation on the part of the buyer to purchase any specific amount of the commodity covered by the contract. In this case it was alleged and proven that plaintiff in error was engaged in the business of operating a filling station in the city of Dallas and the contract was that *it agreed to purchase from defendant in error all of the gasoline used in said station* for the full term of the contract. The amount of gasoline plaintiff in error used in its filling station was capable of definite ascertainment. Had it breached the contract defendant in error's damages could have been definitely ascertained by proof of the amount of gasoline used to operate said station for the unexpired term of the contract.

It is further insisted that the recovery sought and obtained by plaintiff in error is for breach of an alleged contract in restraint of trade, and Wood v. Texas Ice and Cold Storage Co. (Tex. Civ. App.) 171 S. W. 497, is cited to sustain the proposition that no action is maintainable thereunder. We are of the opinion that the contract condemned in the above case is unlike that involved in this case. There the contract obligated Wood "to make all of his purchases from the first party during the term of this contract." We think it was correctly determined in that case that the contract was in violation of the provision of our anti-trust laws, defining a conspiracy in restraint of trade as being where two persons, firms, or corporations engaged in buying or selling any commodity agree to refuse to buy such commodity from or sell it to any other person, firm, etc. Here plaintiff in error did not agree to buy *all of the gasoline purchased by him* from defendant in error. The agreement was that he would buy the amount used in the operation of a certain filling station. He was at liberty to purchase any amount of gasoline from any other company which might be used in the operation of any other similar business. The effect of the agreement made by him was to contract to purchase gasoline from defendant in error, the amount to be measured by that used in the operation of a particular filling station. Such agreement did not constitute a conspiracy in restraint of trade, but was a valid and enforceable one.

We recommend that the judgment of the Court of Civil Appeals be reversed and the judgment of the trial court affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and that of the district court affirmed, as recommended by the Commission of Appeals.