## JONES INV. CO. v. GREAT ATLANTIC & PACIFIC TEA CO.

### No. 1711—6245.

Commission of Appeals of Texas, Section A.

Nov. 28, 1933.

McCormick, Bromberg, Leftwich & Carrington and W. C. Gowan, all of Dallas, for plaintiff in error.

Touchstone, Wight, Gormley & Price and Robert B. Holland, all of Dallas, for defendant in error.

Chas. L. Black, of Austin, as amicus curiæ.

HARVEY, Presiding Judge.

This is a suit for damages, for the breach of a contract, brought by the plaintiff in error, the Jones Investment Company, against the defendant in error, the Great Atlantic & Pacific Tea Company. In the trial court the Jones Company recovered a judgment for damages. The tea company appealed, and the Court of Civil Appeals held that the contract in question constituted a conspiracy in restraint of trade, as defined by article 7428 of the Revised Statutes, and, basing its judgment on this holding, said court reversed the judgment of the trial court and rendered judgment for the tea company.

The statement of the case, as made by the Court of Civil Appeals, in the following respects, is adopted: "Plaintiff alleged, in substance, and the proof sustained the allegations, that it was engaged in the business of manufacturing, selling, and delivering ice to customers; that defendant was engaged in operating a large number of retail grocery stores in the city of Dallas, in which ice was required for refrigerating purposes; that on January 7, 1927, plaintiff and defendant entered into an oral agreement, to the effect that plaintiff would sell and deliver, and defendant would buy and accept, all ice required in its said stores in Dallas (excluding those located in Oak Cliff) for the year '1927, the defendant agreeing to pay plaintiff 25 cents per hundred pounds; that the parties operated under the agreement until February 19, 1927, when defendant breached the agreement and refused to further accept and pay for ice delivered thereunder. The proof showed that, at the time the agreement was entered into, appellant was operating from twenty to thirty retail grocery stores in the city of Dallas, excluding those in Oak Cliff, and that by reason of the breach of the alleged agreement appellee suffered loss of profits amounting to the sum of $1,354."

In effect, the contract stated was for the sale, by the Jones Company to the tea company, of such a quantity of ice, to be delivered in installments from time to time, during the year 1927, as needed by the tea company, for refrigeration purposes, in its stores located in a defined territory. The sole question before us is whether or not such contract falls within the purview of those provisions of article 7428 of the Revised Statutes which define a conspiracy in restraint of trade as follows: "1. Where any two or more persons, firms, corporations or associations of persons, who are engaged in buying or selling any article of merchandise, produce or any commodity enter into an agreement or understanding to refuse to buy from or sell to any person, firm, corporation or association of persons, any article of merchandise, produce or commodity."

In our opinion the contract in question is not comprehended by the above provisions. Properly construed, the contract discloses no purpose which contravenes the provisions of the statute. The contract does not purport to bind the tea company to make all its purchases of ice from the Jones Company. The contract is essentially of the same character as that held to be valid by Judge Leddy, speaking for Section B of the Commission, in Cox v. Humble Oil Refining Co., 16 S.W. (2d) 285. We see no reason to question the soundness of that holding.

In legal contemplation, the contract in question here was simply for the sale of a certain quantity of ice. Although the quantity of ice which constituted the subject-matter of the sale was not specifically stated in the contract as so many pounds or tons, the terms of the contract furnish a standard by which the quantity was to be measured. That standard of measurement was the quantity of ice needed by the tea company for the accomplishment of the specific purpose named, during the period of time specified. The authorities agree that a contract provi-

sion of this sort furnishes means for the definite ascertainment of the quantity of commodity constituting the subject-matter of the sale, and therefore the quantity is certain. Wells v. Alexandre, 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218; Loudenback Fertilizer Co. v. Tennessee Phosphate Co. (C. C. A.) 121 F. 298, 61 L. R. A. 402; Marx v. American Malting Co. (C. C. A.) 169 F. 582; Minnesota Lumber Co. v. Whitebreast Coal Co., 160 Ill. 85, 43 N. E. 774, 31 L. R. A. 529; Manhattan Oil Co. v. Richardson Lubricating Co. (C. C. A.) 113 F. 923; 1 Williston on Contracts, § 147.

In respect to the question now under consideration, there can be no substantial difference between this contract and one which specifically sets out, in words and figures, the precise quantity of ice contemplated by the contract. To construe the terms of the statute as comprehending such a contract would not only be unreasonable, but would also render the statute of doubtful validity. For in that case the statute, instead of purporting a limitation of the freedom of contract for the benefit of the public, would purport a limitation actually detrimental to the public. In a broad sense, every executory sale of merchandise or other commodity involves an implied agreement that the purchaser will not purchase from any one but the seller the merchandise or other commodity constituting the subject-matter of the sale contract; and all such sales, therefore, would fall within the scope of the statute. The sale contract involved in the present suit does not fall within the scope of the statute, unless the terms of the statute be thus broadly interpreted. In our opinion, the Legislature never intended the statute to bear such a comprehensive meaning.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the trial court be affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is reversed, and that of the district court is affirmed, as recommended by the Commission of Appeals.