## S. H. TWADDELL ET AL. V. H. O. WOOTEN GROCER COMPANY.

No. 6735.   Decided June 16, 1937.
Rehearing overruled July 14, 1937.
(106 S. W., 2d Series, 266.)

*W. D. Wilson,* of Lubbock, and *Callaway & Callaway,* of Brownwood, for plaintiff in error.

On the question of the court's error in refusing to peremptorily instruct the jury in favor of the defendants. Rawleigh Co. v. Gober, 3 S. W. (2d) 845; Kaliski v. Gray, 28 S. W. (2d) 931; Great Atlantic & Pac. Tea Co. v. Jones, 47 S. W. (2d) 362.

*Davidson, Doss & McMahon,* of Abilene, for defendants in error.

The application or contract between Twaddell and his associates and the Wooten Grocer Company, whereby Twaddell and his associates became members of the Red & White system, not being violative of the Texas Anti-Trust Law, and the jury having found that was the only contract between the parties, the

defendant Bowman, sued as a guarantor, was not entitled to a peremptory instruction in his favor. Cox v. Humble Oil Co., 16 S. W. (2d) 285; Montgomery v. Creager, 22 S. W. (2d) 463; W. T. Rawleigh Co. v. Fletcher, 275 S. W. 210.

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

The case is fully stated in the opinion of the Court of Civil Appeals. The facts not material here need not be referred to. 68 S. W. (2d) 285. The principal question to be determined is whether the agreement with respect to the purchase of groceries set forth in the following application executed by Twaddell and his associates, afforded a valid basis of operation between H. O. Wooten Grocer Company as a wholesale grocer and Twaddell and his associates as retail grocers:

"Realizing that the merchandising power of a large group of retail merchants, wholesale supply houses and manufacturers dealing with each other on a basis of mutual cooperation will produce results to the material benefit of all concerned,

"We therefore make application to become a member of the Red & White Stores System.

"It is understood that upon acceptance of this application, all Red & White buying privileges will be in force *for this store*. It is also understood that no Red and White identification will be available until the store has satisfactorily complied with Red & White standards of appearance and operation. (Italics ours.)

"It is agreed that all purchases of dry groceries will be made from the Red & White grocery supply house, and that invoices for same will be paid weekly. Specialty orders will be discontinued.

"And it is agreed that applicant will furnish the Red & White Supply House with a detailed Financial Statement at the time of making application or before engaging as a Red and White operator.

"This membership, when accepted, shall continue for a period of one year. It shall be without costs, dues, or stock purchases. It is also understood that WE shall retain complete control, ownership, and management of this business. It is further understood that this membership, in event of sale of this business, can not be transferred without the consent and approval of the Red & White Organization."

The supply house referred to in the application was owned and operated by the company and the purchases in question were made pursuant to its terms. The evidence shows that in

44 .

connection with and in addition to the terms of the application, the company agreed to furnish and did furnish a "field man" to keep in touch with Twaddell and his associates and advise them of the prices at which they should sell their merchandise and the manner in which they should conduct their store. It further shows that the obligations sued on except as they existed prior to the time when Twaddell and his partner became members of the Red and White organization, arose under and by virtue of the terms of the above application.

The question stripped of collateral matters not necessary to discuss, is whether the agreement to purchase "all dry groceries" from the company's supply house and "to discontinue specialty orders," during the period of membership in the Red & White Stores under the agreement incorporated in the application, is violative of the Anti-Trust Laws of the State and void.

The facts disclose that the purchases agreed to be made were for the operation of the one store owned by Twaddell and his associates for a period of one year. The buying privileges contracted for are shown in the face of the application, as well as by the evidence, to have been "for this store." There is no evidence indicating that Twaddell was not at liberty to make purchases of groceries from others for use in any other similar business.

This fact differentiates the present case from Wood v. Texas Ice and Cold Storage Co., 171 S. W. 497, in which the agreement involved was held to be violative of the Anti-Trust Laws of the State. By the terms of the contract there considered Wood agreed "to make all of his purchases" of ice from the storage company without limitation of any character. The same differentiating fact was pointed out by this Court in Cox, Inc., v. Humble Oil & Refining Co., (Com. App.) 16 S. W. (2d) 285, in which it is said:

"Here plaintiff in error did not agree to buy *all of the gasoline purchased by him* from defendant in error. The agreement was that he would buy the amount used in the operation of a certain filling station. He was at liberty to purchase any amount of gasoline from any other company which might be used in the operation of any other similar business. The effect of the agreement made by him was to contract to purchase gasoline from the defendant in error, the amount to be measured by that used in the operation of a particular filling station. Such agreement did not constitute a conspiracy in restraint of trade, but was a valid and enforceable one."

The Dallas Court of Civil Appeals in Great Atlantic & Pacific Tea Co. v. Jones, 47 S. W. (2d) 362, expressly did not follow

the Cox case, and there held that the agreement under consideration by it in the Jones case "to the effect that plaintiff would sell and deliver, and defendant would buy and accept, all ice required in its said store in Dallas (excluding those located in Oak Cliff) for the year 1927," was, as in the Wood case, in violation of the Anti-Trust Laws. This Court in an opinion by Judge HARVEY reversed the judgment of the Court of Civil Appeals based upon that holding. Jones Inv. Co. v. Great Atlantic & Pacific Tea Company, (Com. App.) 65 S. W. (2d) 495. Speaking for the Commission he says:

"The contract does not purport to bind the Tea Company to make all its purchases of ice from the Jones Company. The contract is essentially of the same character as that held to be valid * * * in Cox v. Humble Oil & Ref. Co., 16 S. W. (2d) 285. We see no reason to question the soundness of the holding."

■ The contract involved in the present case is likewise of the same character as the contract in the Cox case. The conclusion of the Court of Civil Appeals that it is settled by the decisions of this Court that an agreement such as is incorporated in the application above set out is not a violation of the Anti-Trust Laws of the State, is correct.

We are in accord with all of the holdings of the Court of Civil Appeals, except with respect to the necessity for remanding the case in part. It is our view that instead of affirming the judgment of the trial court in part, and reversing and remanding in part, the judgment of the trial court should be affirmed in part, and reversed and rendered in part.

The trial court predicated its judgment against W. R. Lewis upon a finding of the jury that the value of the stock on hand at the time he purchased from Twaddell a one-half interest in the business in disregard of the Bulk Sales Law, was $612. The Court of Civil Appeals correctly sustained Lewis' assignment of error complaining that the finding had no support in the evidence. The court reversed and remanded the case in so far as it awarded personal recovery against him, questioning however whether in the event of ultimate recovery against him it should be for more than one-half of the value of the stock, and requested counsel on motion for rehearing to give the court the benefit of their views upon this question.

■ It is unnecessary to discuss this question. A complete itemized inventory of the stock is in evidence showing that *at the time Lewis purchased* an interest in the business the value of the stock was $68.62. There is no evidence of probative force to the contrary. Furthermore, it is undisputed that Twaddell

and Lewis a few days after the purchase by Lewis paid the company $200 on account, which represented proceeds of sales from the stock purchased and stock that was added thereto by purchases made from another wholesale company. Since plaintiff company was thus paid more than the full value of the stock, the equities of the transaction were more than satisfied. Fischer v. Rio Tire Co. et al., (Com. App.) 65 S. W. (2d) 751; Tex. Jur., Vol. 20, Sec. 213 et seq., pp. 569-701.

The case has been fully developed, and there is no necessity for another trial. That part of the judgment of the trial court, except the award of personal recovery against Lewis, and that part of the judgment of the Court of Civil Appeals, except its remand as to Lewis, is affirmed. The personal judgment against Lewis in the trial court is reversed and set aside, and that part of the judgment of the Court of Civil Appeals remanding as to Lewis, is also set aside, and judgment is here rendered denying the company a personal judgment against him.

The judgment as reformed is affirmed.

Opinion adopted by the Supreme Court June 16, 1937.

Rehearing overruled July 14, 1937.