**CITY OF CROSBYTON v. TEXAS–NEW MEXICO UTILITIES CO.**

No. 5357.

Court of Civil Appeals of Texas. Amarillo.

Nov. 24, 1941.

Rehearing Denied Jan. 5, 1942.

W. P. Walker, of Crosbyton, for appellant.

Crenshaw, Dupree & Milam, of Lubbock, for appellee.

STOKES, Justice.

On the 14th of September, 1925, appellant, the City of Crosbyton, which was organized and operating as a municipal corporation under the general laws of the State, by proper action of its governing body, entered into a contract with Texas Utilities Company, a corporation, the name of which was afterwards changed to Texas-New Mexico Utilities Company, the appellee herein, by which appellee agreed to furnish, and appellant city agreed to take and purchase for a term of 20 years from its date, electric energy necessary to meet its entire requirements for power to operate the pumps in connection with the city water works, a system owned by the city. The contract also required it to take and purchase electric current to meet its entire requirements during such term for the purpose of lighting the streets. The rates to be paid by the city were provided in the contract but were afterwards reduced by agreement. The contract was performed by both parties until December 20, 1939, when appellant refused further to comply with it and notified appellee to that effect.

The record does not contain the original petition but on April 11, 1940, appellee filed its first amended original petition in which it sought damages from appellant for breaching the contract, alleging that certain equipment installed by it for the purpose of carrying out the contract had become worthless and that during the balance of the term of twenty years provided by the contract it would have made a profit from furnishing the electric energy as provided in the contract, both of which items of damage it alleged amounted to $3,962.

The case was tried on January 22, 1941, and submitted to a jury upon two special issues, in answer to which the jury found that appellee would have made a profit during the unexpired portion of the contract term of $372.60 from furnishing the electric energy necessary for lighting the streets and $467.36 from furnishing electric current to do the city's pumping.

Judgment for appellee was rendered by the court for the aggregate amount found by the jury and, its motion for a new trial being overruled, appellant brings the case before this court for review.

Appellant presents a number of assignments of error and propositions of law but we think the case is controlled by two contentions made by it which are, first, that the contract involved the exercise by the city of its governmental functions and the effect of its provisions was to delegate or cede those functions and thus embarrass

subsequent administrations. Secondly, that, if the contract involved the exercise of the city's proprietary or corporate functions, then its exclusive features render it obnoxious to the constitution and laws of the state which forbid monopolies and conspiracies against trade.

The contract is lengthy but its pertinent features are to the effect that the appellee would furnish and the city was required to take electric energy necessary to meet its entire requirements for power to do the city pumping and electric current to light the streets during the life of the contract. It recited that the provisions in relation to increasing and reducing the connected load were merely for the purpose of enabling the city to take care of its demands from time to time during the life of the contract and were not to be construed as authorizing the city to increase or decrease its requirements for electric current by using the same from any other source. In regard to the pumping of the water the contract provided that the city engaged appellee to furnish to it the power necessary to do all of its pumping for the city water supply which included the supply of water to the residents of the city through the water system owned by the city, as well as water used for fire protection, sewerage, and other public purposes, during the term of 20 years provided by the contract. There is no question that, in so far as the electric energy necessary to operate the city's pumps for its water supply and the street lighting system are concerned, the contract was exclusive.

Appellant's first contention is that the duty of the mayor and city commissioners to maintain control over the governmental and legislative functions of the city is enjoined by the constitution and laws of the state and such functions cannot be delegated to others. It asserts that, by entering into the contract of September 14, 1925, the governing body of the city bound itself to purchase all of the electric current that would be needed or required by it to operate its pumps in connection with the city's water works and street lights, the effect of which, it says, was to preclude the city and its future administrations from contracting for or acquiring such power or energy from any other person or source. In support of its contention it cites us to the familiar case of City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S.W. 143, and many other cases of like import.

The law is well established in this state, as well as other jurisdictions in this country, that the functions of a city are dual in their nature. One element of such functions is designated as governmental or legislative and the other as proprietary, business or corporate functions. It is hardly necessary to cite authority in support of the proposition that when a city is exercising those functions that are enjoined upon it by law, that is, those which it is bound to assume under the provisions of the statutes of the state or government which gives it life, it is considered to be an arm of the government and is acting for the people generally as an agency of the government. These powers and functions are, therefore, governmental in their nature and can neither be ceded nor exercised in such manner as to bind the future course of the city or prevent modification or change of its policy if its governing body should thereafter wish to do so. Functions such as the exercise of the police power by which it promotes or protects the general welfare, comfort and convenience of the people, maintains supervision and control over its own property, or enacts legislation under which the peace and good order of society is regulated, are governmental functions over which the governing body must retain exclusive control. These cannot be delegated nor bartered away and any effort to do so or any contract which has the effect of passing them to others or tying the city's hands so that it is impotent to change its policy in respect thereto is unconstitutional and void. City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S.W. 143; City of San Antonio v. San Antonio Irrigation Co., 118 Tex. 154, 12 S.W.2d 546; Nairn v. Bean, 121 Tex. 355, 48 S.W.2d 584; City of Ft. Worth v. George, Tex.Civ.App., 108 S.W.2d 929; Omaha Water Co. v. City of Omaha, 8 Cir., 147 F. 1, 12 L.R.A., N.S., 736, 8 Ann. Cas. 614.

In the exercise of its proprietary or business functions, however, such as those which it exercises when it enters into a contract for the private interests of its own inhabitants or of itself, a municipal corporation is limited by no such restriction. It is at liberty to exercise these powers in the same way and to the same extent as individuals or private corporations and it is settled by a long line of decisions of the courts of this state that the ownership and operation of public utilities, such as

water works, electric light plants and street railways, is not a governmental function but is proprietary in its nature and constitutes a business or corporate function of the city. City of Ysleta v. Babbitt, 8 Tex. Civ.App. 432, 28 S.W. 702; Green v. City of Amarillo, Tex.Civ.App., 244 S.W. 241; Lenzen v. City of New Braunfels, 13 Tex. Civ.App. 335, 35 S.W. 341; City of Wichita Falls v. Lipscomb, Tex.Civ.App., 50 S.W.2d 867; Community Natural Gas Co. v. Northern Texas Utilities Co., Tex. Civ. App., 13 S.W.2d 184; City of Galveston v. Rowan, 5 Cir., 20 F.2d 501.

■ It is evident from a reading of the contract that, in entering into it, it was the purpose of the governing authorities of the city to procure power essential to the operation of its own water system and to light the streets. No attempt was made to regulate the rates to be charged residents of the city for water for domestic or other purposes. In fact the record shows that the city retained its water works intact and made its own charges for the use of the water and collected its periodical charges therefor. Furthermore there is no provision of the contract which indicates any attempt to give to appellee an exclusive franchise over the streets or the exclusive right to use them for the establishment of an electric light plant or system. These rights constituted no part of the subject matter of the contract and, as far as the contract is concerned, appellant retained all of its governmental functions in this respect. Being the owner of a municipal water plant and system the city had the right, as any other person or corporation would have had, to contract for electric energy, steam power or any other kind of energy or power of which it was in need, to propel and operate its machinery for the purpose of pumping its water. It was under no statutory mandate to own and operate a system of water works nor did the law require it to furnish a system of street lights for the convenience of its urban population.

■ The record indicates that, at the time the contract was executed, the city did not own a municipal electric light plant but, if it had, and the generating machinery had been insufficient to produce electric current sufficient to supply its customers and, at the same time, to operate its water pumping machinery and light the streets, and its governing authorities had deemed it not for the best interests of the

city to purchase additional generating machinery, it seems there could be no doubt that the city would have been authorized to enter into the contract here complained of by it and obligate itself to purchase, over a period of years, sufficient additional electric energy to propel and operate its pumping machinery and supply the lights for its streets. Under those circumstances it is easily conceivable that it might be for the best interest of the city to make such a contract. If one were so made, it would not, in our opinion, fall under the condemnation of the law. If such a contract could legally have been made under the circumstances suggested, then certainly it could be made under the circumstances which existed at the time the contract here involved was entered into. The mere ownership vel non of a lighting system could not be said to affect the power and authority of the governing authorities of the city to bind it under such a contract. If the city, being the owner of a municipal light plant, could make such a contract to augment its power capacity and thus enable it to supply a service that otherwise would have to be neglected, then certainly, in so far as its power and authority are concerned, it could make such a contract under the circumstances under which the one here in question was made. In our opinion the rules of law invoked by appellant and so well stated by Justice Stayton in the case of City of Brenham v. Brenham Water Co., supra, are not applicable to the instant case and the first contention made by appellant, as rearranged and stated by us, will be overruled.

■ The second contention presented by appellant, under our arrangement of the propositions, involves the question of whether or not the contract contains exclusive features so as to render it obnoxious to the constitution (Art. 1, § 26), Vernon's Ann.St. and laws (Art. 7428, Vernon's Ann.Civ.Statutes) of this state. Wood v. Texas Ice & Cold Storage Co., Tex.Civ.App., 171 S.W. 497. While the contract is exclusive in respect to the power or energy necessary to operate the pumps in connection with the city's water works and also the electric current necessary to operate its street lights, yet, in our opinion, it is not of that exclusive or monopolistic nature that is inhibited by the constitution and statutes of this state. Appellant did not agree to purchase from appellee all of the electric current used by it and it is

conceivable that electric current and energy may be used for many purposes other than to operate water pumps and supply lights for the streets. In fact the record in this case shows that, after making the contract, the city installed an ice manufacturing plant for the purpose of manufacturing ice for its own use and for sale to its customers. It also installed a siren to give warning of fires that might spring up in the city. It also erected a city hall and in all of these institutions it utilized electric current. The ice plant was operated by power which it purchased from appellee; the siren was propelled by electric energy and the city hall was lighted by electric current, all of which it purchased from appellee and none of which was included in the contract of September 14, 1925. The record further shows that in 1939 the city erected and established its own municipal light plant designed to manufacture and furnish to its inhabitants electric current for lighting their homes and places of business, as well as other domestic purposes. The electric current which it is now using for those purposes was not included in the contract in question nor is it contended by either party to the suit that the city was bound under the contract to purchase electric current from appellee for any purpose for which it might wish to use the same save only to furnish power for the water pumps and electric current for lighting the streets. It is true that the contract did not specify the quantity of electric current which the city agreed to utilize nor measure the same in advance of its consumption; but that cannot be said to affect its validity. The contract amounted to an agreement to purchase the quantity of electric current needed by the city for the specific and restricted purposes therein mentioned and was to be paid for as it was consumed. We interpret it, therefore, to be simply a purchase and sale of a certain quantity of energy or number of kilowatt hours of electricity which the city had the right to purchase and appellee had the right to sell. Cox, Inc., v. Humble Oil & Refining Co., Tex.Com.App., 16 S.W.2d 285; Jones Investment Co. v. Great Atlantic & Pacific Tea Co., Tex.Com.App., 65 S.W.2d 495; Twaddell v. H. O. Wooten Grocer Co., 130 Tex. 42, 106 S.W.2d 266.

Such being the nature of the contract, it does not fall within the inhibition of either the constitution or statutes of this state, but was a valid and binding contract.

Appellant's second contention will, therefore, be overruled.

We have examined all of the assignments of error and propositions presented by appellant and have discussed what we consider to be the controlling issues in the case. In our opinion no error is revealed by any of the assignments of error and, as a consequence, the judgment of the court below will be affirmed.