**PADGITT** et al. v. **LONE STAR GAS CO.**

No. 13856.

Court of Civil Appeals of Texas.   Dallas.

June 25, 1948.

Rehearing Denied July 23, 1948.

**134**

P. P. Ballowe and Alto B. Cervin, both of Dallas, for appellants.

Marshall Newcomb, Warren J. Collins, E. H. Selecman and Robertson, Jackson, Payne & Lancaster, all of Dallas, Texas, for appellee.

YOUNG, Justice.

Appellants brought this suit to enjoin appellee from alleged violations of the State Anti-Trust Laws in conducting its butane gas business in Texas; contending that their several businesses (butane dealers) were being injured by defendant's unfair and illegal method of competition. Plaintiffs do not pray for the recovery of damages or relief claimed as peculiarly applicable to them; a general enforcement of the laws against trusts and monopolies being sought in their bill of particulars.

The question here simply involves the sufficiency of pleading to state a cause of action, with three different pretrial hearings as background thereto. On each hearing, material allegations of the petition were stricken upon special exceptions with the result of amended pleading; and plaintiffs declining to amend the third amended

original petition after similar court rulings, there was an order of dismissal, with timely appeal.

Appellants' points of error relate entirely to the court's action in sustaining exceptions One to Nineteen inclusive, necessitating, first, a summary of said trial petition, viz:

Petitioners are engaged in the business of supplying butane to homeowners, schools, gins and others using gas as a fuel, operating under trade names of Automatic Gas Company, Dallas Butane Gas Company, Allen Butane Gas & Equipment Company, Pittsburgh Water Heater Sales Company, K. & G. Butane Gas & Equipment Company, Eveready Butane Gas Company and Consumers Butane Gas Company, residing and carrying on their several businesses in the Texas counties of Dallas, Madison, Tarrant, McLennan and surrounding trade territory; that defendant is a public utility corporation, organized and doing business under provisions of ch. 15, Title 32, Rev.Civ.Sts., Vernon's Ann. Civ.St. art. 1495 et seq., and prior to the acts complained of had confined its activities to the production and distribution of natural gas and the sale of butane to such ultimate consumers as had gas systems on their premises either manufactured, sold or sponsored by defendant, of which were above-ground systems; also that up to some fifteen months before institution of suit (June 1944) plaintiffs had been permitted to buy butane from defendant in wholesale quantities, the latter then being a manufacturer and producer of said gas, selling same principally at wholesale along with consumers having aforesaid Star Gas systems; that about the time above mentioned, defendant commenced the sale of butane at retail, refusing further to supply plaintiffs and other dealers at wholesale; on the other hand commencing to sell its butane to ultimate consumers regardless of the storage and dispensing systems used or owned by such customers, soliciting and procuring as customers those who had previously bought gas from plaintiffs.

They allege that the ceiling price of butane delivered into tanks of consumers has been fixed at 10 cents per gallon,

plaintiffs having always sold said gas at various prices within the maximum established by Federal regulations; defendant, however, after entering into active retail competition, and for purpose of attracting customers away from plaintiffs, has agreed to sell and does sell butane at six cents per gallon; and with intent to injure plaintiffs, continues to sell gas at such lower price; naming thirteen Dallas County individuals, former customers of one of the plaintiffs on basis of eight cents per gallon, who had been solicited by defendant through its agents and employees, with resulting contracts of sale and delivery of gas to them at six cents per gallon.

A conspiracy on part of defendant's officers, agents and employees to restrain trade and competition in violation of art. 1640, Penal Code, is then charged; the conspiracy being between defendant corporation and its said officers, agents, etc., acting within the scope of their employment[1] to enter into competition with those already selling butane at retail and underselling them by charging six cents per gallon; said officers and employees agreeing to take advantage of defendant's position as principal manufacturer and producer of butane in Texas and open offices in the various communities of the State for handling of retail sales; ceasing to sell gas as theretofore in wholesale quanities and thus to monopolize the retail field; further, as part of the conspiracy, making contracts with ultimate consumers whereby, in consideration of aforesaid reduced price of gas, each consumer has bound himself to purchase all his butane requirements from defendant. Attached to the petition as "Exhibit A" is the contract in question which it is alleged the thirteen Dallas County individuals have separately executed along with numerous unknown persons, former customers and otherwise. Plaintiffs further charge that thousands of such written contracts have been signed between defendant and consumers throughout Texas, each purchaser being therein bound to buy butane only from defendant during existence of such contract; and if "Exhibit A" as a single contract be not obnoxious to the State Anti-Trust Laws, nevertheless the existence of many such contracts constitutes a conspiracy, restraint of trade and an illegal means of competition; further, that the inevitable result of such series of contracts is to establish a monopoly in the retail sale of butane, because they are exclusive in nature; and whether exclusive or not, actually have that effect in that the customer signing same believes that he is obligated to take his full requirements from the defendant and does actually deal exclusively with defendant under the belief that he is so bound; that plaintiffs have no adequate remedy at law; their customers are being wheedled away by such illegal devices and their several businesses are being destroyed; that the resulting injury is not compensable in money because the damage is impossible of ascertainment; praying that defendant be perpetually enjoined from (1) engaging in the practices herein complained of; (2) from making exclusive contracts with customers in writing; (3) from creating a monopoly in the sale of butane at retail in Texas, particularly in the areas where plaintiffs reside; and (4) from negotiating any future contracts in violation of State Anti-Trust Laws, or for such lesser relief as the facts may warrant.

It is unnecessary to quote the contract (Exhibit A) in full. Such writing identifies the parties as "Seller," and "Buyer," allegedly covering a two-year period and "thereafter until terminated by either party on ten (10) days written notice * * *." In the second paragraph it provides: "Subject to and in accordance with the terms, conditions and covenants hereinafter contained, Seller agrees to sell and deliver to Buyer, and Buyer agrees to receive and purchase from Seller, all of Buyer's butane requirements for use in Buyer's underground butane system, hereinafter called 'system', and consisting primarily of a tank suitable to receive butane and a gauge to register the contents in said tank, located at (a specified place)." Also, under "Dis-

---

[1] It is not alleged that either defendant corporation or its officers, agents and employees entered into a conspiracy with any outside person or corporation or with any one with whom plaintiffs were competing.

continuance of Deliveries and/or Cancellation," it recites "Seller may discontinue deliveries of butane and/or cancel this contract on account of any of the following reasons: For failure by Buyer to purchase all of Buyer's said butane requirements from Seller * * *." The instrument is called a "Butane Sales Contract," containing detailed provisions under various headings such as "Delivery," "Measurements," "Monthly Bills," "Price," etc.

█ The provisions of art. 1640, P.C. (invoked by appellant) impose criminal liability upon corporate agents, employees, stockholders or officers who participate in the formation of a trust, monopoly or conspiracy in restraint of trade as these terms are defined in previous articles, both civil and penal (1632, 1633, 1634, P.C., Vernon's Ann.P.C. arts. 1632–1634, 1640, 7426, 7427, 7428, R.S. Vernon's Ann.Civ.St. arts. 7426–7428. In this connection and in final analysis, the allegations of petitioners simply charge that appellee corporation and its officers, agents and employees have formed a trust (art. 7426), a monopoly (art. 7427) and a conspiracy in restraint of trade (art. 7428), in that the corporation and its agents, officers and employees, while acting within the scope of their employment have combined and conspired to injure appellants as competitors in the following respects: (1) by discontinuing its wholesale butane business and entering the retail butane business in competition with appellants and others; (2) by offering to appellants' customers and prospective customers butane at a price below that at which appellants sell or offer to sell it; (3) by entering into contracts with consumers, on the form attached to appellants' petition as Exhibit A, which have the effect of restraining competition and monopolizing the retail butane business. A reading of the cited statutes under their well settled interpretation readily demonstrates, we think, the insufficiency of the petition in question to state a cause of action.

█ (1) A trust or monopoly is not alleged. Arts. 7426, R.S. and 1632, P.C. are identical; defining a "trust" as a "combination of capital, skill or acts by two or more persons, firms, corporations or associations of persons, or either two or more of them for * * *" the seven enumerated purposes; and a combination is essential to the formation of a "trust." Our Supreme Court from early times has ruled that a statutory combination cannot exist unless the two or more persons are independent and capable of acting in competition with one another; holding in Welch v. Phelps & Bigelow Windmill Co., 89 Tex. 653, 36 S.W. 71, that a trust is not created by an agreement growing out of the relationship of principal and agent, where the agent is acting within furtherance of the principal's business, because there was no "combination of capital, skill, or acts by two or more persons." Obviously, therefore, appellee and its agents acting within the scope of their employment cannot combine and conspire within the meaning of the statute; it being equally apparent that appellee and its retail customers were not capable of acting independently and competitively in purchases and sales of butane gas. See also Gates v. Hooper, 90 Tex. 563, 39 S.W. 1079. (2) Under arts. 7427, R.S. and 1633, P.C., a combination of two or more corporations is required to constitute a monopoly, which statutory element is absent from appellants' allegations; Nickels v. Prewitt Auto Co., Tex.Civ.App., 149 S.W. 1094.

█ (3) The principal ground of attack, however, is upon the quoted provisions of the agreement between gas company and customer asserting an illegal restraint of trade (art. 7428, R.S. and 1634, P.C.); but the inapplicability of these statutes to the pleaded contract is implicit in appellants' own brief, citing (as they do) Cox, Inc., v. Humble Oil & Refining Co., Tex.Com.App., 16 S.W.2d 285, and Jones Investment Co. v. Great Atlantic & Pacific Tea Co., Tex. Com.App., 65 S.W.2d 495. This contract names a particular buyer, giving his mailing address. The seller agrees to furnish and buyer agrees to receive and purchase all of the latter's requirements for use in buyer's underground butane system located at a single specified place. The parties have not obligated themselves with respect to the buyer's purchase of butane gas otherwise than in the transaction expressly pro-

vided for. In Wood v. Texas Ice & Cold Storage Co., Tex.Civ.App., 171 S.W. 497 (strongly relied upon by appellants), it was because the retailer had bound himself to make all of his purchases of ice from the wholesaler, that the contract was declared illegal. In the instant case, by way of contrast, the customer's obligation is simply to buy from appellee the quantity of butane needed by him for the accomplishment of the specific purpose named, during the period of time specified. Jones Investment Co. v. Great Atlantic & Pacific Tea Co., supra; not agreeing to purchase from appellee all the butane that he might need. This latter fact, says the Supreme Court, distinguishes the contract in the Wood case from those involved in more recent decisions and declared valid. See Twaddell v. H. O. Wooten Grocer Co., 130 Tex. 42, 106 S.W.2d 266, where Judge Taylor quotes with approval the following from Cox, Inc. v. Humble Oil & Refining Company, supra [130 Tex. 42, 106 S.W.2d 267] " 'Here plaintiff in error did not agree to buy all of the gasoline purchased by him from defendant in error. The agreement was that he would buy the amount used in the operation of a certain filling station. He was at liberty to purchase any amount of gasoline from any other company which might be used in the operation of any other similar business. The effect of the agreement made by him was to contract to purchase gasoline from defendant in error, the amount to be measured by that used in the operation of a particular filling station. Such agreement did not constitute a conspiracy in restraint of trade, but was a valid and enforceable one.' "

In the City of Crosbyton v. Texas-New Mexico Utilities Co., Tex.Civ.App., 157 S.W.2d 418, a contract obligating the City to buy from the company over a period of twenty years the latter's entire requirements of electricity for power to operate particular pumps and light its streets, was sustained, the court, in distinguishing the facts from Wood v. Texas Ice & Cold Storage Co., supra, saying [157 S.W.2d 421]: "While the contract is exclusive in respect to the power or energy necessary to operate the pumps in connection with the city's water works and also the electric current necessary to operate its street lights, yet, in our opinion, it is not of that exclusive or monopolistic nature that is inhibited by the constitution and statutes of this state. Appellant did not agree to purchase from appellee all of the electric current used by it and it is conceivable that electric current and energy may be used for many purposes other than to operate water pumps and supply lights for the streets. * * * The contract amounted to an agreement to purchase the quantity of electric current needed by the city for the specific and restricted purposes therein mentioned and was to be paid for as it was consumed. We interpret it, therefore, to be simply a purchase and sale of a certain quantity of energy or number of kilowatt hours of electricity which the city had the right to purchase and appellee had the right to sell."

Furthermore and as appellee points out, the type of contract here calls for the rendition of a service; obligating the seller to maintain the supply of butane in buyer's system at not less than 10 percent of its capacity and providing for payment according to monthly consumption as shown by the tank gauge or meter readings to be made by the buyer and mailed to seller. If appellee is to render this continuity of service, obviously there must be some definiteness and exclusiveness attached to the rights and obligations of the parties; the exclusive feature of the instant arrangement being but ancillary and necessary if the contracted service is to be performed.

Also strongly relied upon by appellants is Fairbanks, Morse & Co. v. Texas Electric Service Co., 5 Cir., 63 F.2d 702, certiorari denied, 290 U.S. 655, 54 S.Ct. 71, 78 L.Ed. 567, which case involves a set of facts aside from the present controversy. There [63 F.2d 704], the power company had obtained exclusive contracts from 90 percent of the users of electricity in 65 towns. The contracts of from two to five years bound each consumer to take for period of the contract "The extent of their full requirement of power," providing as to both domestic and power customers that they must not resell to any person any part of the energy furnished. Under such facts, these utility contracts would manifestly

fall within the inhibition of Woods v. Texas Ice & Cold Storage Co., supra, as providing for a general restraint; the court also concluding that such system of exclusive contracts prevented municipal competition in the electric light and power business—a function accorded by Texas Statutes to cities and towns.

But appellant pleads "that if said contracts singly are not themselves in violation of the law, said series of hundreds and thousands of such contracts so made by the defendant have the necessary and natural tendency to monopolize the field for the sale of butane gas at retail * * *"; again citing the Federal case of Fairbanks, Morse & Co. v. Texas Electric Service Co. in support, with particular reference to the holding of Judge Hutcheson that a system of contracts creates a monopoly, where one or a few of the same exclusiveness might not have such effect. A complete answer to the contention just made will be found, we believe, in appellee's counter point 4: "Since the type of contract in question is not unlawful when made with one consumer, it is not unlawful when made with many consumers. If one consumer can lawfully contract for his requirements of butane at a particular location, and for a particular system, then other consumers can do likewise. The multiplication of a lawful contract does not make the result unlawful." In applying our Anti-Trust Laws, Texas courts do not look to the number of contracts involved but rather to the restraint imposed, whether general or limited. For instance, in Twaddell v. H. O. Wooten Grocer Co., supra, the contract was not condemned because it was one of a system, but sustained because it operated as a limited and not a general restraint upon each contracting member of the Red & White Stores System. In short, and as logically stated by appellee, the validity of the particular restraint must be determined upon basis of each individual contract; "otherwise the court must undertake the insuperable task of judging in each individual case how many such contracts can be made and of drawing a line based upon numbers of ratios or percentages between competitors."

It should here be noted that in the brief of appellants is the argument of unfair competition in that the defendant is falsely representing its ability to supply requirements of butane for purpose of alienating plaintiffs' customers and inducing them to enter into these restrictive contracts; also charging sales of butane by defendant at less than cost of manufacture or production in violation of art. 1638, P.C.; their trial petition, however, containing no such allegations.

Lastly and in final analysis, the claim of unfair competition is based on sales by defendant of butane at a price less than appellants are able or willing to sell it to their customers. Legitimate price-cutting is of the essence of a free competition; being an all too infrequent phase of present day economics, under which commodity prices appear to have no direction except "up." "* * * One having business interests to serve may by every fair means, such as lowering prices, offering better service, showing better salesmanship, freely induce those not under fixed contract to become his customers. * * *" Fairbanks, Morse & Co., v. Texas Electric Service Co., supra. "If, for instance, the appellees, in the transaction of the business of lending in competition with appellants, had offered money for loan at a rate below that which the appellants could furnish it, and thereby induced the customers of the appellants to borrow from the defendant company, and by reason thereof Brown Bros. were unable to maintain their business, and were broken up and compelled to quit, then no cause of action would exist in favor of the appellants against the defendants, because, however malicious the motive, the means used would be lawful. * * *" Brown v. American Freehold Land Mortgage Co., etc., 97 Tex. 599, 80 S.W. 985, 987, 67 L.R.A. 195.

The trial court's judgment must be in all respects affirmed.