**GANDY v. PILLSBURY MILLS, Inc.**

No. 9921.

Court of Civil Appeals of Texas. Austin.

Dec. 13,. 1950.

Rehearing Denied Jan. 10, 1951.

W. C. Wallace, of Cameron, for appellant.

Emory B. Camp, of Camp & Camp, Charles C. Smith, Jr., all of Cameron, for appellee.

ARCHER, Chief Justice.

This suit was an interpleader brought by Bassell Wilson Produce Company against Pillsbury Mills, Inc., and Jim Gandy, to determine the ownership of money in the amount of $2,652.80, tendered into the registry of the court by the plaintiff. The money represented the proceeds of the sale of some turkeys, bought by plaintiff from defendant Jim Gandy. Gandy asserted ownership of the money by reason of his ownership and sale of the turkeys, while the defendant Pillsbury Mills, Inc., claimed the money under a written "Turkey Raiser's Finance Agreement" previously entered into between Pillsbury and Gandy, and certain notes and chattel mortgage covering the turkeys, given by Gandy pursuant to such written agreement. Trial was to the court without a jury, and resulted in judgment in favor of Pillsbury for the money tendered in court by plaintiff, and a personal judgment in favor of Pillsbury against Gandy for the difference between the amount found by the court to be owing Pillsbury by Gandy, and the sale price of the turkeys.

This appeal is founded on two assignments of error:

"First Point of Error: The trial court erred in upholding the validity of the 'Turkey Raiser's Agreement,' since such agreement on its face disclosed an illegal restraint of trade within the purview of Article 7428, Revised Statutes of Texas.

"Second Point of Error: The claim of Pillsbury Mills, Inc., to the money in court having been based on an illegal and unenforceable contract, the court erred in holding that the money belonged to Pillsbury and in failing to hold that the money belonged to the appellant, Gandy."

There is no dispute as to the facts in the case. The trial court made findings of fact which are not objected to.

A portion of the "Turkey Raiser's Finance Agreement" reads:

"Cameron, Texas R 3 12-27 1948.

"Jim Gandy (hereinafter called the Raiser) hereby agrees with Pillsbury Mills, Inc.,.

Feed and Soy Division (hereinafter called the Company), as follows: To feed only Pillsbury Best Turkey feeds (to the full amount of commercial feeds required) to Raiser's turkeys during 1949, and to purchase from Wilson Produce Co. of Cameron, Texas, Feed Dealer (hereinafter called the Dealer), Pillsbury's Best Turkey Feeds to the full extent of Raiser's needs for feeding turkeys during the period covered by this contract to be delivered F.O.B., Cameron, Texas.

"The Raiser plans to feed approximately 1,000 turkeys during the period mentioned above.

"The Company agrees to sell to the Dealer Pillsbury's Best Feeds as required by the Dealer to fill orders received from the Raiser and to accept notes made by the Raiser to the order of the Company covering the items enumerated below.

"The Raiser agrees that the Company shall have and hereby gives to the Company as security for the payment of the principal and interest owing by the Raiser on such notes at any time or times a first lien on all the turkeys, together with their get or increase and any additions which may be acquired by the Raiser subsequent to this date, which during the 1949 feeding season belong to and are fed by the Raiser at the following location, viz:

"The farm of Jim Gandy described as follows: J. K. McLennan Survey of Section —, Township —, Range — of P. M County of Milam, State of Texas.

"The Raiser further agrees to give to the Company at any time at its request a first mortgage on all such turkeys which then or thereafter during the 1949 feeding season belong to the Raiser at said location.

"The Raiser states that the Application for Turkey Feed Financing dated Dec. 27, 1948, given by him to the Company is a complete, accurate and truthful statement of his financial condition.

"The Raiser agrees that during the 1949 feeding season said turkeys will be free from all liens and encumbrances other than the lien given to the Company as herein provided.

"The Raiser agrees to execute and deliver, and the Company agrees to accept, a note or notes to the order of the Company, payable on or before December 31, 1949, with interest after maturity at the rate of 6% per annum until paid, for the sum of the following amounts:

"1. The cost of Pillsbury's Best feeds purchased by the raiser from the dealer, at the retail price prevailing on date of delivery, plus service charges of $1.00 per ton; provided that the total amount of such feeds for which notes will be accepted by the Company shall not exceed 55 lbs. for each turkey fed by the raiser, unless the Company expressly consents in writing.

"2. Insurance premiums, if insurance through the Company on poults or turkeys is required by the raiser.

"3. The cost of pullorum clean poults purchased by the raiser, at the market price at time of delivery, plus service charges of 3¢ per poult.

"The purchase price of said poults will be advanced to the producer thereof by the Company, provided that the producer is approved by the Company."

It is to be noted that the only question to be determined so far as the appellant is concerned is the validity of the agreement. The appellee, while contending that the agreement is legal, further contends that even if the agreement is invalid, yet it having been fully executed by the voluntary performance of the parties that the profit is not contaminated and that the courts will recognize and enforce a resulting estate and the right to possession thereof.

As has been stated, the first point made by appellant is that the agreement discloses on its face an illegal restraint of trade within the purview of Article 7428, Vernon's Ann.Civ.St.; and in support thereof directs attention to the first paragraph of the agreement as hereinabove set out.

Appellant cites as authority for his position the case of Wood v. Texas Ice & Cold Storage Co., Tex.Civ.App., 171 S.W. 497. In the Wood case a retail dealer in Dallas contracted to make all of his pur-

chases of ice from the Ice Company during the period of the contract, and this was held to be in violation of Article 7428, V.A.C.S.

The appellee contends that the contract is valid and enforceable and does not require the appellant to purchase exclusively from appellee all his turkey feed requirements for feeding turkeys which he might feed and raise elsewhere than on his farm on the J. K. McLennan Survey in Milam County, Texas, during the 1949 turkey raising season; and that the entire agreement must be considered and not from any part or parts of it in deducing the intention of the parties, and that such construction will render the contract lawful; and finally that even if the contract was not valid, still the appellee was entitled to recover the money paid into court, because the contract had been fully executed by the voluntary performance by the parties, and the profit or estate arising therefrom is not contaminated, and that appellee is entitled to the right to the money and possession thereof.

The first money advanced to appellant by appellee was on March 23, 1949, in the sum of $1169, as the cost of 1,000 poults purchased by appellant, and subsequently during the 1949 season the appellant purchased feed aggregating $1,826.34.

If we determine that the contract is valid we need go no further in a disposition of this case than to affirm the judgment; but, if on the other hand, we question the validity of the contract we must then go further and discuss the phase of the case that the terms of the agreement have been fully performed by the voluntary action of the parties.

We shall decide the question of the validity of the contract. The Turkey Raiser's Finance Agreement, about which this suit arises, is long and has many provisions.

As stated by Judge Smedley in Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442, 444: "* * * and it is now well settled that all parts of the instrument will be given effect when possible, and the intention of the parties will be gathered from the whole without reference to matters of mere form, relative position of descriptions, technicalities, or arbitrary rules." Citing cases.

In the case of Citizens National Bank v. Texas & P. Ry. Co., 136 Tex. 333, 150 S.W.2d 1003, 1006, the court stated: "It is the duty of the court, in determining the meaning and intent of a contract, to look to the entire instrument; that is, the contract must be examined from its four corners. Stated in another way, the contract must be considered and construed as an entire instrument, and all of its provisions must be considered and construed together. It is not usually proper to consider a single paragraph, clause, or provision by itself, to ascertain its meaning. To the contrary, each and every part of the contract must be construed and considered with every other part, so that the effect or meaning of one part on any other part may be determined. 10 Tex.Jur., p. 282, § 164."

We believe that the parties to the agreement intended to limit the application of the contract to turkeys fed and raised on the appellant's farm on the J. K. McLennan Survey in Milam County, Texas, during the 1949 turkey raising season, and is therefore not void as violative of Texas anti-trust laws. There is no evidence indicating that Gandy was not at liberty to make purchases of feed from others for use in any other similar business. Twaddell v. H. O. Wooten Grocer Co., 130 Tex. 42, 106 S.W.2d 266; Cox, Inc., v. Humble Oil & Refining Co., Tex. Com.App., 16 S.W.2d 285.

The judgment of the trial court is affirmed.